JOHN CRAIG, Appellant, v. JAMES PARKIS, Respondent.

The transfer of a debt or obligation carries with it as an incident, all securities for its payment. The assignment of a bond and mortgage gives to the assignee the benefit of, and the right to sue upon a guaranty by a previous assignor of their collection, although such guaranty is not, in terms, transferred with the principal obligations.

A guaranty of the collection of the amount, as "it becomes due," is but an undertaking on the part of the guarantor, that the debt will be paid, if the principal be prosecuted with reasonable diligence, and the former is discharged by want of such diligence, on the part of the creditor, to prosecute the principal debtor to judgment and execution.

Where the facts are undisputed, the question of what is reasonable diligence, is a question of law for the court; and a delay of prosecution for six months after the debt has become due, where all the principals reside in the State and can be personally served, is not reasonable diligence, and discharges the guarantor.

Where, during the whole period of such delay, the principals were entirely and hopelessly insolvent—*Held* (MASON, WOODRUFF and JAMES, JJ., *contra*), that this did not excuse the failure of the creditor to prosecute, or dispense with such prosecution, as a condition precedent to his right of recovery against the guarantor.

(This cause was argued on the 16th day of January, 1869, and decided on the 22d day of March, 1869.)

IT was an appeal from a judgment of the General Term of the Supreme Court, in the eight judicial district, affirming a nonsuit of the plaintiff, granted at circuit.

The action was upon a guaranty.

August 18, 1857, Frederick Root executed his bond, and a mortgage, on land in Badaxe county, Wisconsin, to Willard Herrick, to secure the sum of $300, and interest, in three equal amounts, annually.

The first payment was to be made November 1, 1858.

The second payment to be made November 1, 1859.

The third payment November 1, 1860.

On the 24th of August, 1857, E. H. Burgess, by a writing, indorsed on the bond, guaranteed the payment of the bond and mortgage. On the same day, Willard Herrick assigned the bond and mortgage to the defendant, James Parkis, and

guaranteed their payment, by a writing, indorsed on the bond. August 28, 1857, James Parkis, the defendant, assigned the bond and mortgage, and guaranteed the *collection* of the same to Orson Tousley, by the following writing, indorsed on the mortgage :

" For value received, I hereby sell, assign, and set over to Orson Tousley, all my right, title, and interest to the within mortgage, and the bond accompanying the same, and hereby *guaranty the collection of the within amount, as it becomes due,* waiving all notice. Dated Albion, August 28, 1857.

(Signed)        JAMES PARKIS."

This action was commenced upon this last guaranty. On the 3d of January, 1859, Orson Tousley assigned the said bond and mortgage to A. L. Cady, and, on the 1st of January, 1859, Cady assigned the same to the plaintiff, neither assignment in terms carrying with it the defendant's guaranty. April 5, 1859, an action was commenced against Willard Herrick, upon his guaranty, and judgment recovered, for penalty in the bond, execution to collect $141.19, which was returned unsatisfied. No execution has since been issued.

On the 15th of November, 1859, an action was commenced, to foreclose said mortgage. Judgment was obtained, May, 1860, for $254.46, and $30.95 costs. It appeared, by the record, that personal service was not made on Frederick Root. The premises were sold, October 1, 1860, for $28.90; the fees and expenses of sale were $27.90; and the deficiency on the sale was $291.42, for which execution was issued in Wisconsin, and returned unsatisfied. Frederick Root resided in Orleans county, New York.

May 13, 1861, an action was commenced against Frederick Root, upon said bond. Judgment recovered, July 6, 1861. Execution issued, and returned unsatisfied, May 4, 1861. Action commenced against E. H. Burgess, upon his guaranty judgment recovered, July 6, 1861, and execution issued and returned unsatisfied. To excuse the delay in prosecuting the foregoing obligation, the plaintiff, before

resting his case, offered to prove that Root, Herrick, and Burgess, were, and had been, since the first payment became due, utterly and hopelessly insolvent, and that nothing could have been collected of them, by proceedings at law. This was objected to, the objection sustained, the evidence excluded, and the plaintiff excepted.

The plaintiff was nonsuited.

*George F. Danforth*, for the appellant, cited *Cady* v. *Sheldon* (38 Barb., 102); *Gallagher* v. *White* (31 Barb., 92); *Mains* v. *Haight* (14 Barb., 76, 78); *Thomas* v. *Wood* (4 Cow., 473); *Schroeppel* v. *Shaw* (3 Comst., 446); *Daniels* v. *Patterson* (Id., 50); *Brown* v. *Curtis* (2 Comst., 225); *Merritt* v. *Lincoln* (21 Barb., 249); *Newell* v. *Fowler* (23 Barb., 628); 13 Wend., 545; 8 Watts, 361; 11 Vermont, 265; 1 Wend., 462; 10 Bosw., 208; 1 Cush., 473; 30 Vermont, 127; Id., 246; 3 How. U. S. R., 515; 11 Conn., 213; 26 Conn., 437; 2 Parsons on Contr., 174 and 47; Story on Contr., § 970 and 970*a*; also, 1 Caines, 127; 4 Cow., 181.

*Sanford E. Church*, for the respondent, cited, as to delay to prosecute, *Moakley* v. *Riggs* (19 J. R., 69); *Burt* v. *Horner* (5 Barb., 501); *Penniman* v. *Hudson* (14 Barb., 579); *Kies* v. *Tifft* (1 Cow., 68); *Morris* v. *Haight* (14 Barb., 76); *Graham* v. *Bradley* (5 Humph., 476); *Battle* v. *Little* (1 Dev., 381). As to the insolvency of principals, as an excuse for delay, he cited *Vanderveer* v. *Wright* (6 Barb., 544); *Moakley* v. *Riggs* (*supra*); *Burt* v. *Horner* (*supra*); *Birkhead* v. *Brown* (5 Hill, 635, 641); *Gates* v. *McKee* (3 Kern., 232, 237); 17 Wend., 422, 425; 8 Wend., 512, 516; 10 Johns., 312, 327; 23 Barb., 628, 632; 6 Cow., 624.

LOTT, J.  The defendant, by assignment, bearing date the 28th day of August, 1857, assigned to Orson Tousley a mortgage on real estate, in the State of Wisconsin, and the bond accompanying the same, executed by Frederick Root to Willard Herrick, and guaranteed the collection of the amount, secured thereby, as it became due, waiving all notice.

The bond and mortgage bear date the 18th day of August, 1857, and were given to secure the payment of the sum of three hundred dollars, with interest, in three equal annual payments of one hundred dollars each, with interest; the first of which was to be made on the 1st day of November, 1858. Indorsed on the bond, was a guaranty by G. H. Burgess, dated August 24, 1857, guaranteeing the payment thereof, and the said Willard Herrick, by an assignment of the last mentioned date, assigned the bond and mortgage to James Parkis, the defendant, or bearer, and also guaranteed the payment thereof. The said bond and mortgage, and all the right of Tousley in them, were afterwards assigned by him, on the 3d day of January, 1859, to A. L. Cady, and he assigned them, and all money due and to grow due thereon, as collateral security for a debt due from him to the plaintiff, by assignment dated February 1, of the same year.

On the fifth day of April following, the plaintiff commenced an action in the Supreme Court of this State against Herrick, on his guaranty, which was duly prosecuted to judgment, and an execution issued thereon, was returned wholly unsatisfied.

Subsequent to the return of the execution, and on the 15th day of November, 1859, a suit for the foreclosure of the mortgage was commenced in the Circuit Court of the State of Wisconsin against Frederick Root, in which a decree for the sale of the mortgaged premises, and for the payment of any deficiency, was entered, on the 10th day of May, 1860.

The property was sold on the 1st day of October, 1860, and the sum of one dollar, over and above the costs, was realized from such sale and credited on the decree.

An execution for the collection of the deficiency was issued, on the 4th day of December, 1860, and afterwards returned wholly unsatisfied. On the 4th day of May, 1861, an action was commenced by the plaintiff, in the Supreme Court of this State, against the said Burgess, on his guaranty, in which judgment was rendered on the 6th day of July thereafter, for the whole amount payable on the said bond, and on the 13th

day of the month of May, an action was commenced by the plaintiff, in the Supreme Court of this State, against Frederick Root, the mortgagor, in which judgment was also recovered, on the said 6th day of July, for the whole amount due. Executions on both of the last mentioned judgments were issued on the 9th of the same month, and were each returned wholly unsatisfied, before the commencement of the present action.

After these facts were proven, the plaintiff offered to prove that, at the time the first installment of the bond became due, November 1, 1858, the said Frederick Root, William Herrick and E. H. Burgess were and have ever since been, each of them, entirely and hopelessly insolvent, and that nothing could have been collected of them, by proceedings at law then or since.

The court excluded that evidence, and then, no further evidence being introduced, a nonsuit was ordered.

The motion for the nonsuit was based on three grounds ;

1st. That the proofs did not show the guaranty in the suit to be owned by the plaintiff.

2d. That it did not appear, that the plaintiff had used due and proper diligence, in the prosecution of the principal debtor, and the several guarantors.

3d. That there were not sufficient facts stated in the complaint to constitute a cause of action.

The first ground for the nonsuit will be first considered. Although the guaranty of the defendant was not, in terms, assigned to the plaintiff, he became entitled to the benefit of it, under the assignment of the bond, and the money secured thereby. The transfer of the debt to him, carried with it, as an incident, all the securities for its payment. He, therefore, had a right to maintain the action.

The exception to the exclusion of the evidence offered, and the other grounds of the motion for a nonsuit, present, substantially, the same question, and that involves the construction of the defendant's contract.

He guaranteed the *collection*, and not the payment, of the

amount secured by the bond and mortgage, when it became due.

The mere fact of its non-payment, at that time, was, there-fore, not sufficient to give the plaintiff the right of action. He was bound to take proper measures to collect the debt, within a reasonable time after the whole of it became pay-able, conceding, for the present, that such duty did not arise on the previous defaults.

His obligation will be first considered, on the assumption, that all of the parties liable were then able to pay, and that such ability continued for six months thereafter.

The last installment became payable on the 1st day of November, 1860, and legal proceedings could have been immediately taken against Root the obligor, on his bond, and against Burgess and Herrick, the previous guarantors, on their guaranty of payment. None were, however, taken, until in May, 1861, and then only against Root and Burgess.

A judgment had, previously, been recovered against Her-rick for the penalty of the bond, after default was made in the payment of the first installment, and assuming that no further suit against him was necessary, that did not dispense with the necessity of issuing an execution, after the other installments became payable.

It also appears, by the case, that all of the debtors, at the time of the recovery of the judgment, and the issuing of the executions against them, resided in this State, and there is nothing to show, that either of them was, at any time, a non-resi-dent, or that a suit could not have been commenced against them, by a personal service of the summons. A delay for upwards of six months was, under the assumption of the solvency of the parties, not the exercise of proper and due diligence.

Does their insolvency excuse that delay?

I see no principle upon which that can be claimed.

When a creditor agrees with a surety for his debtor, that he will commence a suit against such debtor within a reasonable time after the debts fall due, and, in default thereof, that the surety shall be released, it is a condition precedent to his right of

action against the guarantor, that such suit shall not only be so commenced, but that it shall be carried to consummation.

The plaintiff had no right to determine, on his own responsibility, whether the debt was collectible. That was a question which the defendant had made it incumbent on him to ascertain, by recourse to the ordinary rules provided by the law for the collection of debts.

If the debtor's insolvency is an excuse for the delay, at all, there is no reason why it should not be such, as long as the insolvency continues, and thus the liability of the surety would be, for an indefinite period, controlled by the opinion of witnesses, as to the ability of the principal to pay the debt, and not by the standard, or means, fixed by the parties themselves, for ascertaining that fact.

These views lead us to the conclusion, that the proof of the debtor's insolvency was properly rejected.

It follows, therefore, that the nonsuit was proper, and that the judgment should be affirmed, with costs.

MASON, J. (dissenting.)   There has been a very great deal of discussion, in the courts of this country, as to the legal construction of such a guaranty as this.   The real difference of opinion has been as to what was implied in such a guaranty.   All agree that, unless the terms of the guaranty imply that the liability of the guarantor depends upon the failure to obtain payment of the principal, by proceedings at law, such proceedings are not a condition precedent.   In most of the States, it has been regarded as an undertaking to pay, if recompense could not be obtained of the principal debtor; and that, where clear proof of the principal debtor's insolvency could be made, no suit against him was required.   The following cases will be found to hold this: (*McDoal* v. *Yeomans*, 8 Watts R., 361; *McClurg* v. *Fryer*, 15 Penn. St. R., 3 Harris, 293; *Bull* v. *Bliss*, 30 Vermont R., 127; *Dana* v. *Conant*, Id., 246; *Perkins* v. *Catlin*, 11 Conn. R., 213; *Ranson* v. *Sherwood*, 26 Conn. R., 437; *Sanford* v. *Allen*, 1 Cush., 473; *Gillighan* v. *Boardman*, 29 Maine R., 16 Shep.,

79 ; *Thompson* v. *Armstrong*, 1 Breese Ill. R., 23 ; *Wren* v. *Pierce*, 4 Smedes & Marsh, 91 ; 2 Appl. R., 28.) The rule with us seems to be different.

The rule to be deduced from the adjudged cases in this State, is, that such a guaranty is an undertaking, that the demand is collectible, by due course of law, and that the guarantor only undertakes to pay, when it is ascertained that it cannot be collected by suit, prosecuted to judgment and execution against the principal ; and that the endeavor to collect of the principal, by due course of law, is a condition precedent to the right of action against the guarantor. (*Moakley* v. *Riggs*, 19 J. R., 69 ; *White* v. *Case*, 13 W. R., 543 ; *Eddy* v. *Stanton*, 21 W. R., 255 ; *Taylor* v. *Bullen*, 6 Cow. R., 624 ; *Burt* v. *Fowler*, 5 Barb. R., 501 ; *Loveland* v. *Shepherd*, 2 Hill R., 139 ; *Manning* v. *Haight*, 14 Barb. R., 76 ; *Newell* v. *Fowler*, 23 Barb. R., 628 ; *Van Derveer* v. *Wright*, 6 Barb. R., 547 ; *Gallagher* v. *White*, 31 Barb. R., 92 ; *Cady* v. *Sheldon*, 38 Barb. R., 102.) It must be admitted, also, that the decided weight of authority, in the Supreme Court of this State, is, that a still further condition is implied in such a guaranty, and which is, that due diligence must be used in bringing the suit against the principal, and in prosecuting the same to judgment and execution ; and that any laches in this respect will discharge the surety. (See cases above cited.)

I cannot find that this question has ever been passed upon in this court, or in the late Court of Errors. But, as a general rule, its soundness cannot be doubted, I think, and it seems unquestioned from the adjudged cases. The rule, which requires the creditor, in such case, to use due diligence to collect the debt of the principal, is just and reasonable, and should be enforced, as well for its reasonableness as for the unbroken current of authority with which it is supported. The rule is not, however, in my judgment, inflexible. It is like most general rules ; it has its exceptions. It cannot be maintained upon principle, as the unbending rule, under all conceivable circumstances. If the principal debtor is and has

been, from the time the right to bring suit against him has accrued, utterly and hopelessly insolvent, with no property, out of which anything could be collected, then the reason of the rule, which requires the principal debtor to be prosecuted to judgment and execution with all diligence ceases, and the familiar maxim of the law, " *cessante ratione legis, cessat ipse lex,*" steps in and relieves the creditor from the rule of diligence in prosecuting his suit. The reason of the rule ceasing, the rule itself must cease. This must be so, unless we are prepared to hold, that the creditor should lose his debt for the want of due diligence in doing a vain, idle and useless thing. The law is said to be the perfection of human reason, and should not be subject to such a reproach. Is it insisted that the judgment and the issuing and return of an execution *nulla bona* is, under all circumstances, the best evidence of the debtor's inability to pay? If it is, it cannot be maintained. His recent discharge under the bankrupt act of congress, or under the insolvent laws of the State, on the petition of two-thirds of his creditors, is better evidence of his insolvency than the sheriff's certificate upon the execution, that he has no goods or chattels, lands or tenement. The one is preceded by a full and complete judicial investigation into the property and affairs of the bankrupt, and the certificate of discharge is only issued, when the property of the debtor has been made over to the assignee for the benefit of the creditors. The other is the certificate of a ministerial officer, often made upon the very slightest investigation, and never more than *prima facie* evidence.

What the plaintiff offered to prove, in the case at bar, would have been quite as satisfactory evidence of the inability to collect anything of the principal debtor, as the return of the sheriff, upon an execution; and, it seems to me more so. The plaintiff offered to prove, that these principal debtors were, at the time this debt fell due, and, that each of them, ever since, had been entirely and hopelessly insolvent, and, that nothing could have been collected of them, by proceeding at law, then or since. This evidence was objected to, and

rejected by the court. Under this ruling, we must hold, that the creditor is compelled to proceed to judgment and execution against the principal debtors, where they are concededly, entirely and hopelessly insolvent, and have nothing out of which the execution could be collected, and that he must do this with all diligence, or lose his debt. There is no other principle upon which such a proposition can be maintained, than that it is so provided in the bond, and that the party must stand to his contract. The argument must be, that the condition of the guaranty made due diligence, in such a case, a condition precedent to the right of action against this guarantor. The decided weight of authority in the Supreme Court of this State is certainly to this effect. The rule, however, has been seriously questioned by some of the judges in that court, and was distinctly repudiated in the recent case of *Cady* v. *Sheldon* (3 Barb. R., 103). All that such a guaranty implies is, that the evidence of debt is good, and collectible by due course of law. The courts have said the law imposes this duty to prosecute the principal debtor with reasonable diligence; and this is for the purpose of insuring the collection of the debt out of the principal, and that no opportunity shall be lost to do so. This is very well, and is all right, as a general rule, as we have already said; but when the principal debtors are utterly and hopelessly insolvent, and have nothing out of which an execution could be collected, then the law excuses the want of diligence, as it would have been idle and useless in accomplishing any purpose whatever. Due diligence in prosecuting the principal debtor, who is proved to be utterly insolvent and without any property, should never be implied in such a guaranty, as a condition precedent to the right of action against this guarantor. There is, certainly, no express undertaking of the kind in the contract of guaranty under consideration; and, as none will be implied, it is not required. The terms, "good and collectible," used in such a guaranty, mean nothing more than "*capable of being collected.*" (*Marsh* v. *Day*, 18 Pick. R., 321; *Sanford* v. *Allen*, 1 Cush. R., 474, 475.) The rule,

which would require the creditor to prosecute with diligence, in such a case, a hopelessly insolvent debtor, without any property out of which to collect the same, ought not to obtain, for the further reason, that it would be at war with the general analogies of the law.

The judgment of the Supreme Court should be reversed and a new trial granted.

HUNT, Ch. J., GROVER, MURRAY and DANIELS, JJ., concurred with LOTT for affirmance. WOODRUFF and JAMES, JJ., concurred with MASON, J., for reversal.

Judgment affirmed.