## Union Oil Company
### v.
### Sarah J. Maxwell, Executrix.

*Administration—Claim—Guaranty by Deceased of Certain Alleged Indebtedness—Consideration—Assignment—Pleading — Parties —Misnomer—Abatement—Waiver—Sec. 3, Chap. 76, R. S.*

Upon an appeal from an order and judgment entered by the Circuit Court, disallowing a claim filed originally in the Probate Court against the estate of a deceased person, this court holds that the guaranty by him and another upon the formation, with others, of a corporation, of the payment to it of certain indebtedness claimed to be due them, the same being contributed by them toward the assets thereof, amounted to a guaranty that the indebtedness existed as well as that payment should be made; that the assignment thereof to the corporation carried in equity all the securities, the guarantors had for its payment; that the original agreement, being under seal, is joint and several under Sec. 3, Chap. 76, R. S., and that defendant was properly proceeded against; that the second agreement given by the said guarantors is competent and sufficient evidence of the transfer of the indebtedness to the corporation and of its equitable right to the performance of the guaranty, or damages in lieu thereof, and that a probate court has jurisdiction of such equity against an estate in the course of administration.

[Opinion filed July 2, 1889.]

Appeal from the Circuit Court of Cook County; the Hon. Julius S. Grinnell, Judge, presiding.

Mr. John B. Skinner, for appellant.

This case must be distinguished at the outset from that

class of cases wherein one party becomes a simple guarantor of the payment of the indebtedness of another, and wherein the discharge of the principal operates as a discharge of the guarantor. The class to which the case at bar belongs is one wherein a party, in substance and effect, becomes the guarantor of certain of his own indebtedness, and the fact that he agrees to pay it in a certain way, viz., through the medium of some third person, cuts no particular figure in the construction of his agreement or in arriving at his liability. In this case it is the guarantor (of his own indebtedness) who is primarily liable, and if the creditor fails to receive the amount guaranteed through the channel of the third party, he can still hold the original debtor.

This proposition of law has been passed on by the courts of nearly every State in the Union and there seems to be no dissenting voice as to the general principle. Darst v. Bates, 95 Ill. 493; Runde v. Runde, 59 Ill. 98; Meyer v. Hartman, 72 Ill. 442; Brown v. Curtis, 2 Comst. (N. Y.) 225; Cardell v. McNeil, 21 N. Y. 336; Bruce v. Burr, 67 N. Y. 237; Milks v. Rich, 80 N. Y. 269; Malone v. Keener, 44 Pa. St. 107; M. & G. R. R. Co. v. Jones, 57 Ga. 198; Dyer v. Gibson, 16 Wis. 557; E. M. & R. M. Co. v. Shattuck, 53 Wis. 455.

In Darst v. Bates, *supra*, our Supreme Court in distinguishing between the two classes of guaranties say (at page 512): " It is a general principle, which prevails in all cases under this branch of the statute, that wherever the defendant's promise is, in effect, to pay his own debt, though that of a third person be incidentally guaranteed, it is not necessary that it should be in writing. * * * The assignor owes the assignee and that particular mode of paying him is adopted ; he guarantees in substance his own debt."

The same position is taken by our Supreme Court in Runde v. Runde, and Meyer v. Hartman, *supra*.

Brown v. Curtis, *supra*, was a case in which the payee and holder of a promissory note transferred it to his creditors in exchange for his own note held by such creditor, and guaranteed the payment of the note transferred, although the form of guaranty used, expressed no consideration. The New

Union Oil Co. v. Maxwell.

York court say, at page 229 : "Although in form this is a promise to answer for the debt or default of another, in substance it is an engagement to pay the guarantor's own debt in a particular way.   He does not undertake as a mere surety for the maker, but on his own account, and for a consideration which has its root in a transaction entirely distinct from the liability of the maker.   The defendant was a debtor to the plaintiff, and gave the note, with the guaranty, to satisfy that debt."

Again (at p. 234): "If he (the guarantor) intends by the payment of the note which he guarantees, to discharge a distinct obligation, one not originally at all connected with or having reference to the note, then he, in effect, contracts for himself, and his undertaking is original and not within the statute, and no consideration need be expressed in the guaranty."

In Cardell v. McNiel, *supra*, the plaintiff sold defendant a horse and received as part of the consideration therefor a note of one Cornell, payable in a buggy.   The plaintiff, through his duly authorized agent, warranted Cornell to be "good," and that the plaintiff would get the buggy when the note became due.   The note turned out to be worthless, and suit was brought against the guarantor.   The court say (at p. 340) : "It is claimed that the guaranty is void by the statute of frauds.   In mere form it was certainly a collateral undertaking, because it was a promise that another person should perform his obligation.   But, looking at the substance of the transaction, we see that the defendant paid, in this manner, a part of the price of a horse sold to himself.   In a sense merely formal, he agreed to answer for the debt of Cornell.   In reality he undertook to pay his own vendor so much of the price of the chattel, unless a third person should make the payment for him and thereby discharge him."

In Milks v. Rich, 80 N. Y. 269, the court reviews and follows the cases above quoted from, with several others, and quotes the following, from Dauber v. Blackney, 38 Barb. 432: "That whenever the holder of a note against a third person, turns it out in payment of his own debt, or in the payment of

property purchased, or for money received by him from the person to whom he transfers it, and at the same time agrees that the note is good, or will be paid at maturity, or that it will be collected by due process of law against the maker, this is an undertaking, in substance, entirely for his own benefit and advantage, and the contract is valid, although it rests entirely in parol, and is not within the statute of frauds."

In Malone v. Keener, M. & G. R. R. Co. v. Jones, Dyer v. Gibson, and E. M. & R. M. Co. v. Shattuck, all cited above, the courts of Pennsylvania, Georgia and Wisconsin are equally strong in the enunciation of this doctrine.

In Dyer v. Gibson (at p. 560) the Supreme Court of Wisconsin say: "Decision has multiplied upon decision, with scarce a syllable of conflict, for more than a century, that such a promise is not reached by the statute; and it is now too late for discussion."

Mr. A. B. JENKS, for appellee.

GARY, J. In the months of September and October, 1875, the proper steps were taken for the incorporation of the Maxwell Oil Company, all of the stock being taken by John P. Maxwell, William E. Wheeler, Benjamin V. Page and William Sprague, and in the following year the name was changed to the Union Oil Company.

The appellee is executrix of Maxwell, and the change of name being after his death, one of the objections made to the claim of appellants is, that the change of name is invalid. If that position be true, a matter not examined into, it is only a misnomer of the old corporation, and is matter of abatement, waived by going into evidence upon the merits. Hoereth v. Franklin Mill Co., 30 Ill. 151. The merits of the case can be best shown by the documentary evidence. The first document is as follows:

" Articles of agreement between Joseph P. Maxwell and William E. Wheeler, parties of the first part, and Benjamin V. Page and William Sprague, parties of the second part, witnesseth:

The above parties agree to form a co-partnership for the manufacture and sale of lard oil, machinery oil, lubricating and other oils, tallows, etc., to continue for the term of ten years.   And it shall be at the option of either three of the four above mentioned parties to terminate said partnership as much sooner than ten years as they may elect to do so.

The business shall be conducted under the firm name of Maxwell, Wheeler & Co.   The parties of the first part shall contribute to the capital stock of the new firm the amount that shall be found, on the 1st of October, 1874, to be invested in their business and belonging to them, and consisting of their good accounts, stock at its market value, and the improvements, buildings, machinery, etc., etc., included in the factory they own on Illinois street, at cost amounting in all to twenty-two thousand seven hundred and ninety-two and seventy-seven one-hundredths dollars ($22,792.77).

The parties of the second part shall contribute one hundred and fifty (150) feet of land on Erie street, now covered by their oil factory and the factory buildings, machinery and all else contained in said factory that belongs to them (excepting the iron safe) standing on said land, subject to certain mortgages to the Charter Oak Life Insurance Company for thirty thousand dollars ($30,000) at eight (8) per cent.

The surplus of the value of said contribution shall be estimated at twenty-seven thousand dollars ($27,000) and the new firm shall assume and pay said mortgage.

The parties of the second part shall also contribute on the first day of October, 1874, the sum of fifty thousand dollars ($50,000) in cash, making the capital stock of the parties of the second part, seventy-seven thousand dollars ($77,000).

The amount invested by each party shall draw interest at the rate of ten (10) per cent per annum, which shall be credited to their respective accounts at the close of each year and shall be paid from the profits of the business, and any balance shall be divided in the proportion of six-tenths to the party of the first part and four-tenths to the party of the second part.

This partnership shall commence on the first day of Octo-

ber, 1874. From the first of May, 1874, to the first of October, 1874, the parties of the first part shall occupy the factory, buildings and property of the parties of the second part, paying therefor as rent the interest of the mortgage of $30,000 to the Charter Oak Life Insurance Company, and insurance on the property, and nothing more. It is further agreed that the parties of the second part shall furnish perfect title to their said factory and land, and deed the same to the new firm, subject to the above named mortgage.

The mortgage above mentioned covers four hundred and fifty (450) feet of the land belonging to the parties of the second part, and in case the said parties of the second part shall sell or dispose of any part of that remaining, and then after deeding the one hundred and fifty (150) feet to the new firm, it is understood and agreed that they may, if necessary to give a title, pay the Charter Oak Insurance Company any part of the mortgage. And for such part as they may pay, they shall receive from the new firm a note at eight (8) per cent interest for that amount to mature at the maturity of said mortgage.

It is mutually agreed by and between said parties that neither of said parties shall draw from said firm and business more than the sum of ten thousand dollars ($10,000) in the aggregate per year.

It is further mutually agreed that the parties of the first part guarantee to the new firm all the indebtedness due them from the West Virginia Oil and Oil Land Company, and B. S. Compton and the parties of the second part shall not be interested in or liable for any indebtedness contracted by reason of dealings that may have been had with said West Virginia Oil and Oil Land Company and B. S. Compton.

It is further mutually agreed that in case of the death of either of said parties then the said business of said firm shall continue until the end of the fiscal year, at which time a settlement of his interest shall be made.

It is further mutually agreed that the parties of the first part shall, till the close of this partnership, devote their entire time and attention to the business of the firm. In witness

whereof we have hereto set our hands and seals, this first day
of May, 1874.

|                      |          |
|----------------------|----------|
| JOSEPH P. MAXWELL,   | [SEAL.]  |
| WILLIAM E. WHEELER,  | [SEAL.]  |
| BENJ. V. PAGE,       | [SEAL.]  |
| WILLIAM SPRAGUE.     | [SEAL.] ” |

And the next as follows:

" Whereas, the undersigned, Joseph P. Maxwell and Will-
iam E. Wheeler, at the time of the formation of partnership
with Benjamin V. Page and William Sprague, under the firm
name of Maxwell, Wheeler & Co., on October 1, 1874, con-
tributed to the assets of the said firm on their part, "all their
good accounts," and placed among such good accounts the
indebtedness due to them from the West Virginia Oil and Oil
Land Company and B. S. Compton; and

Whereas, as part consideration that said B. V. Page and
William Sprague would become members of the said firm of
Maxwell, Wheeler & Co., and contribute to the capital thereof,
the undersigned did guarantee to the said firm the payment
of the said indebtedness so due from the said Oil and Oil Land
Company and B. S. Compton; and

Whereas, the said firm of Maxwell, Wheeler & Co. has
conveyed all its assets, including the said indebtedness, to the
Maxwell Oil Company, and the individual members of said
firm have become the shareholders of the Maxwell Oil Com-
pany, and the amount of the said indebtedness is represented
in the shares of stock issued to the undersigned.

Now, therefore, we and each of us jointly and severally do
guarantee unto the Maxwell Oil Company the payment to the
said company of the full amount of said indebtedness, and
hereby deposit with Benjamin V. Page and William Sprague
as collateral security that the same will be paid, our shares of
stock in the Maxwell Oil Company (87 shares of the said Max-
well, and 113 shares of the said Wheeler,) and give to the said
Benjamin V. Page and William Sprague, or either of them,
full power and authority to sell said shares of stock or any
portion thereof, at public or private sale, without advertising
the same, or otherwise giving notice to either of us, whenever,

in their judgment, the terms of the said guaranty shall be broken on our part, and it shall be necessary for the security of said Maxwell Oil Company that such sale shall be made. In case they shall make such sale the proceeds thereof shall be applied to the payment of said indebtedness, with all interest due thereon, and all expenses attending the sale. If there shall be a surplus, the same shall be returned to us.

JOSEPH P. MAXWELL,

WILLIAM E. WHEELER."

It turned out upon subsequent litigation, that there was no indebtedness to Maxwell and Wheeler from the West Virginia Oil and Oil Land Company, although the figures of $22,792.77 in the agreement between them and Page and Sprague, were inserted by their bookkeeper, at their instance, about October 1, 1874, by taking from their books as due to them from the Virginia Company $29,659.49.

The account thus shown was by them put in as assets, and so entered upon the books of the new firm. Considering now only that partnership agreement, what did Maxwell and Wheeler guarantee?

The appellee says that it was the payment of what might be really due, and nothing else; not the existence of the indebtedness in fact, as well as the payment. The appellant claims that the latter construction is correct. This is the only construction that really makes the guaranty of any value, and which is consistent with the hypothesis that the parties entering into business relations with each other, requiring capital, had common sense. And it is the construction Maxwell and Wheeler put upon the guaranty the next year, when the corporation was formed, and in the paper they signed they recited that they had contributed to the assets of the firm of Maxwell, Wheeler & Co. "the indebtedness due to them from the West Virginia Oil and Oil Land Company" and "did guarantee to the said firm the payment of the said indebtedness so due."

It is not necessary to inquire whether, under the circumstances so far as they appear, or are to be inferred from this record, this last paper, although all in the past tense in its recitals, should be considered as importing a present agree-

ment that Maxwell and Wheeler, in consideration that the Maxwell Oil Company did then, at their request, take that indebtedness for stock of the company issued to them, guarantee its payment.

The original agreement under which the firm of Maxwell, Wheeler & Co. was formed, was under seal, and besides thereby importing a consideration, shows in its provisions a full consideration for the guaranty contained in it. The assignment by the firm to the corporation of that indebtedness, carried, in equity, all the securities the firm had for its payment, whether guaranties or in more tangible shape. 2 L. C. in Eq. 1667, notes to Ryall v. Rowles ; Ullman v. Kline, 87 Ill. 268 ; Stillman v. Northup, 17 N. E. R. 379 ; Smith v. Starr, 4 Hun, 123 ; Craig v. Parkis, 40 N. Y. 181.

The original agreement, being under seal, is joint and several by statute. Sec. 3, Chap. 76, R. S. And in such case, if one covenantor died, a separate action lies against the personal representatives of the deceased, as well as against the survivor. Ballance v. Samuel, 3 Scam. 380. This guaranty being an agreement to which Maxwell and Wheeler were parties of the first part, and Page and Sprague of the second, Page and Sprague might maintain an ac'ion of covenant against the appellee upon it, the damages recovered to be appropriated as the supposed indebtedness would have been, if it had been paid. The second agreement, signed by Maxwell and Wheeler, is competent and sufficient evidence against them of the transfer of the indebtedness to the corporation, and, therefore, of the equitable right of the corporation to the performance of the guaranty, or damages in lieu thereof. Of such equity against an estate in the course of administration, the Probate Court has jurisdiction. The cases to this point are collected in appellee's brief in Dogget v. Dill, 108 Ill. 560.

The judgment of the Circuit Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion. In adjudicating the equities, the stock pledged as security must be taken into the account, but the case here does not show what ought to be done in that regard.

*Reversed and remanded.*