### JACKSON et al. v. DECKER et al.

*(Supreme Court, Appellate Division, First Department. February 19, 1897.)*

1. GUARANTY OF COLLECTION—PROCEEDING AGAINST PRINCIPAL DEBTOR.

A purchaser of notes secured by trust deed on land in another state, to whom the seller gives a guaranty of "collection" of the notes with interest, is not relieved from pursuing with due diligence his remedy on notes and trust deed, before resorting to the guarantor, by conditions (1) in case of default the holder of the notes shall, at request of the guarantor, at once forward the same with trust deed for collection; (2) the trust deed shall be foreclosed in the usual course, and, in case there is no bid sufficient to cover debt, the land may, at option of guarantor, be bid in in the name of the holder of the notes; and (3) in case the land is so purchased, the guarantor binds himself to take full charge of it, and sell it within two years after maturity of the notes, and, if it does not sell for enough to pay the debt, to make good the deficiency.

2. SAME—OF PAYMENT.

A guaranty, "We guaranty the payment of the interest as it matures on the principal sum of said loan, until the principal is paid," is a guaranty of "payment," so that on default resort may be had to the guarantor, without first proceeding against the principal debtor.

Appeal from special term, New York county.

Action by John P. Jackson and another, administrators of Maurice J. Smith, deceased, against George G. Decker and others, said Decker alone answering. From a judgment dismissing the complaint, plaintiffs appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Nelson Smith, for appellants.

J. K. P. Jackson, for respondents.

PATTERSON, J.  This action was brought to reform and recover upon certain guaranties signed by George G. Decker and his copartner in the firm name of Decker & More, and by the McKinley & Heliker Investment Company. The defendant George G. Decker alone answered the complaint. It appeared upon the trial that the plaintiff's intestate, Maurice J. Smith, bought of George G. Decker and his co-partner certain promissory notes, made by different parties, but all of the same general character and description. One of them was purchased on the 24th day of May, 1887. It was made by one Henderson, of McPherson, Kan., for the sum of $1,000, was dated the 1st day of May, 1887, was payable five years after date at the Girard National Bank in Philadelphia, with interest at the rate of 7 per cent. per annum, payable semiannually. Accompanying such note was a mortgage or trust deed to secure its

payment, which mortgage was made by Henderson to one Heliker, as trustee, upon certain lots of land in Rice county, in the state of Kansas. At the time of the transaction between the plaintiffs' intestate and Decker & More, and as a part of the same transaction, an instrument in writing was delivered by the latter to the former, which instrument recited the sale of the note secured by the trust deed, and then provided as follows:

"That in consideration of said sale the undersigned guaranty the collection in full of said note with seven per cent. interest upon the same, upon the following conditions: First. In case of default in the payment of said note or interest due on same, or a failure to comply with the requirements named in the trust deed securing said note, the holder of said note shall, at the request of the undersigned, at once forward said note and trust deed for collection. Second. Said trust deed shall be foreclosed in the usual course provided by law, and the land sold. In case there is no bid sufficient to cover the debt and costs, the land described in the trust deed may, at the option of the undersigned, be bid in in the name of the holder of this note. Third. In case the land is so purchased, the undersigned hereby bind themselves to take full charge of said land, and sell same within two years after the above-described note matures, and, in case said land does not sell for a sufficient amount to pay the debt in full, to make good and pay any deficiency.
"[Signed]　　　　　　　The McKinley and Heliker Investment Company,
"W. B. McKinley, Secretary.
"Decker & More."

Interest was paid on the note up to a certain time by Decker & More, they having received the money for that purpose from the McKinley Company, but when the note matured it was not paid. It was presented some time after maturity at the Girard National Bank, and payment was demanded, but there were no funds there with which to make payment, and none had ever been deposited with that bank for that purpose. Decker & More never made any request to the plaintiffs, as holders of the note and mortgages, to forward the same for collection; nor have they given any directions with reference to the enforcement of the security collateral to the note. It further appears that the lands covered by the mortgage were sold in September, 1893, by the constituted authorities in the state of Kansas, for unpaid taxes, and that the lands were conveyed to the purchaser at the tax sale. Another of the notes was bought by the plaintiffs' intestate about the 12th or 15th of August, 1887. It was made by Elijah D. Harding and Mary M. Harding, of McPherson, Kan., for the sum of $500, dated May 1, 1887, and with reference to this note substantially a similar state of facts is disclosed. Decker & More sold the note in connection with which a mortgage or trust deed was given as collateral, and a guaranty of the same character and in the same words, and signed in the same way, as that connected with the Henderson note, was also given to the plaintiffs' intestate. The note was payable at the same place, and it was presented for payment, and payment was refused for the same reason as in the case of the Henderson note, and the lands were also sold for taxes, and conveyed to a purchaser at the tax sale. The same inaction of Decker & More with reference to the conditions of the guaranty was also proven as to this note. On the 27th of April, 1888, the plaintiffs' intes-

tate bought another note of Decker & More, which note was made by Daniel C. Horney, of McPherson, Kan., for the sum of $500, dated April 1, 1888, payable in five years, at the same place, and in the same way as the other two notes.    This note was also accompanied by a mortgage or trust deed made in the same way as the others; and in connection with the transaction Decker & More delivered to the plaintiffs' intestate a guaranty in the same form, containing the same conditions as that in connection with the Henderson note, and a further stipulation as to interest before maturity, hereafter to be referred to.    The same state of facts was substantially disclosed with reference to the history of that note and guaranty.    The land covered by the Horney mortgage was also sold for taxes, and conveyed to a purchaser; and the same state of facts appears with reference to the refusal of Decker & More to take any steps to enforce the guaranty.    There is a material difference between the defendant's contract relating to the Harding note and the guaranties of the two other notes.    It is alleged in the complaint in the second cause of action that the defendants Decker & More, at the time the plaintiffs' intestate purchased the Harding note, agreed to give to him a written guaranty of J. B. and W. B. McKinley of the Harding mortgage, and it is alleged that such guaranty was not given.    It is sufficient to say upon that subject that the proof made by the plaintiffs is entirely insufficient to show that such guaranty was not furnished by Decker & More.    It was only shown that such a guaranty could not be found among the intestate's papers.    Part of the relief demanded in the complaint was the reformation of the several contracts of guaranty by inserting in them certain matters which it is claimed were omitted by mistake.    The court below permitted the contracts mentioned in the second cause of action to be corrected by inserting a proper description of the premises covered by the mortgage, but as to other relief asked the court dismissed the complaint on the merits, and from the judgment dismissing that complaint this appeal is taken.

The contracts of guaranty sued upon in this action are personal obligations of the firm of Decker & More.    There is nothing, either in the form of the contracts or in the history of the transactions, so far as disclosed by the proofs, to authorize a finding that Decker & More, in making the sale to the plaintiffs' intestate of the promissory notes secured by the farm mortgages, were acting in any other capacity than as dealers personally and directly with Mr. Smith. Although those guaranties are signed by the McKinley & Heliker Investment Company, they are also signed by Decker & More without any qualification or limitation, or anything that would indicate that they were agents for anybody.    The guaranties were given upon full consideration, because they are part of, and inseparably connected with, the several transactions of the sales of the notes. But they were not guaranties of payment of the principal of either of the three notes, or of the interest of two of them.    They were merely guaranties of collection except as to interest on the Horney

note.   The distinction between guaranties of payment and guaranties of collection is stated with great clearness by Rapallo, J., in McMurray v. Noyes, 72 N. Y. 524, as follows:

"The fundamental distinction between a guaranty of payment and one of collection is that in the first case the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor; while in the second case the undertaking is that, if the demand cannot be collected by legal proceedings, the guarantor will pay, and consequently legal proceedings against the principal debtor, and a failure to collect of him by those means, are conditions precedent to the liability of the guarantor; and to these the law, as established by numerous decisions, attaches the further condition that due diligence be exercised by the creditor in enforcing his legal remedies against the debtor."

Omitting the matter of interest on the Horney note, there can be no doubt as to the nature of the guaranty attached to each of the notes sold to the plaintiffs' intestate.   It is declared to be a guaranty for the collection in full of said notes, and the only question, so far as the liability of the defendant Decker is concerned, is whether there is anything in the contracts of guaranty to change the relation of Decker & More to that guaranty by relieving the plaintiffs from the duty of proceeding against the makers of the notes or to enforce the security, by diligent pursuit of remedies for that purpose.   It is claimed by the learned counsel for the appellants that the contracts of guaranty are not for the collection generally of the notes and mortgages, but are contracts for the collection of the notes out of the mortgaged premises in a particular way and by specially provided steps or mode of procedure.   These contracts cannot be so construed. In each instance there was a sale of a promissory note, which constituted a primary and original liability.   The trust deeds or mortgages were collateral to such notes.   The holder of the notes, upon default in their payment, had an immediate right of recourse against the land, to foreclose the mortgages, without any control or interference of the guarantors.   The conditions annexed to the guaranty were conditions in favor of the guarantors.   They were not conditions imposing burdens upon such guarantors, but gave them privileges.   They were not obliged to do anything, so far as the holders of the notes were concerned, under those conditions, unless they were availed of by the guarantors.   The first condition is that, in case of default in the payment of the note or interest or a failure to comply with the requirements of the trust deed, the holder of the note should, if the guarantors requested, at once forward the note and the trust deed for collection.   There is no obligation there assumed on the part of the guarantors to take the burden of suing upon the notes or foreclosing the mortgages, but for their own protection, if they desired to do so, they could insist that the holder proceed at once and without any delay to enforce the remedies arising upon the security.   And so as to the second condition.   It was made in favor of the guarantors, and required that the trust deed or mortgages should be foreclosed in the usual course provided by law, and the land sold; and, when that was done, if there were no bids sufficient

to cover the debt and costs, the guarantors reserved to themselves the right, at their option, to bid in the property in the name of the holder of the note. But that did not throw upon the guarantors the burden of instituting the foreclosure suit, or conducting it so as to compel them to be the actors in the effort to realize on the security. And the third condition was only to become binding upon the guarantors in case, upon a foreclosure suit, the land should be purchased in the name of the holder of the notes. As we construe these contracts of guaranty, and the conditions thereof, there was nothing in them which changed the legal situation of the parties, or which relieved the plaintiffs from the obligation of pursuing the remedies against the makers of the notes and against the land, or from endeavoring to realize their claims from the principal debtors before they could hold Decker & More liable upon the instruments. Nor is there anything disclosed in the proofs with reference to subsequent conditions or situations of the land covered by the mortgages which would impose a liability on the guarantors, or discharge the plaintiffs from the duty of pursuing in the first instance those liable as original debtors.

The Henderson note became due in May, 1892. No effort was made by the plaintiffs to enforce that note, or the security collateral to it. The deed to the purchaser at the tax sale of the land covered by the Henderson mortgage was not made until September 20, 1893. The Harding note became due in May, 1892. The deed to the purchaser at the tax sale of that property was not made until October, 1893. The Horney note became due in April, 1893. The deed to the purchaser at the tax sale of the property covered by the Horney mortgages was not made until February, 1896. Thus, in the case of each of these mortgages or trust deeds, the plaintiffs could have proceeded to enforce their remedies upon the securities, and the guarantors would have had an opportunity to avail themselves of the second and third conditions contained in the contracts of guaranty had the plaintiffs diligently pursued their rights and remedies. It cannot be said that a resort to the enforcement of the securities would have been ineffectual, or a mere idle ceremony. It is a mere speculation so to consider. We cannot find in this case anything to excuse the plaintiffs from the performance of the duty which was incumbent upon them. The undertaking of guarantors such as Decker & More has been held to be only one that the debt will be paid if the principal be prosecuted with reasonable diligence, and the guarantor is discharged from all liability by the want of such diligence on the part of the creditor in prosecuting the principal debtor; and it has also been held that, where the facts are undisputed, the question of what is reasonable diligence is a question of law for the court. Craig v. Parkis, 40 N. Y. 181. It is true that this is largely controlled by the nature of the security, and the residence, perhaps, of the parties; but in this case these notes were purchased with the knowledge that they were made by nonresidents, and that the securities were upon lands in a distant state; and there cannot, therefore, be any excuse arising from the circumstances referred to. There is nothing in the case to show that the maker of either of the

notes was insolvent, even if that circumstance were an important
one; and, as was said in the case of Burt v. Horner, 5 Barb. 501, if
the principal resides in another state when the contract is made,
the holder of the guaranty will then be required to proceed there
against that principal debtor before pursuing the guarantor.

It is claimed, however, that the plaintiffs were entitled to recover
upon one of these guaranties for certain installments of interest due
and unpaid before the maturity of the note, and that claim is well
founded. To the guaranty of the Horney note was annexed a fourth
clause, in these words, viz.: "We further guaranty the payment of
the interest as it matures on the principal sum of said loan until the
said principal is paid." That was a promise enforceable at once on
the interest becoming due, and in default of payment of it by the
maker. The allegations of the complaint in the third cause of ac-
tion are broad enough to allow a recovery of unpaid interest on this
note up to the date of its maturity. The evidence shows that it
would amount to $87.50, and for that sum judgment should have
been given in plaintiffs' favor.

The judgment must be modified by inserting therein a provision
that the complaint be dismissed as to all the causes of action set forth
therein, except as to so much of the third cause of action as relates
to the claim for interest on the note therein referred to, which in-
terest was not paid prior to the maturity of said note, and remained
unpaid at the time of the trial; with costs of the action in the court
below only. All concur.