WATSON *vs.* LE ROW, administrator, &c. and others.

In 1839 E. B. gave a bond and mortgage to D. for $2625, which were afterwards assigned to W. In 1842 W. foreclosed the mortgage, in chancery. On the sale of the premises there was a deficiency of $2387; for which sum the decree was docketed, in August, 1842. An execution was issued, and returned unsatisfied. On the 17th of May, 1843, W. assigned the decree to the plaintiff. On the 18th of September, 1840, E. B. became entitled to have conveyed to him, in fee, a lot of land by M. and C., in pursuance of a previous contract for the purchase of the same; he having paid to M. and C. the whole of the consideration money. By the direction of E. B., on the 26th of May, 1841, M. and C. conveyed the lot of land to trustees in trust for N. B., the wife of E. B. In August, 1845, E. B. died, and his wife in June, 1843. On the 7th of May, 1841, the plaintiff in this suit and W. K. W. recovered a judgment against E. B., upon which a creditor's bill was filed, in September, 1841, and in October, 1841, a receiver was appointed. In February, 1842, E. B., in obedience to an order of the court, made a general assignment, to the receiver. On the 6th of November, 1844, the receiver sold to the defendant H., at public auction, all the right, title and interest which E. B. had in the lot in question on the 7th of May, 1841, or at any time afterwards, and executed to him a deed therefor. On a bill by the plaintiff, against H., the administrators of E. B., the heirs at law of N. B., his wife, and the trustees named in the deed of trust, to obtain satisfaction of the decree obtained by W. against E. B., and assigned to the plaintiff, out of the lot in question, in which bill it was alledged that a trust resulted in favor of the plaintiff as a creditor of E. B. from the deed from M. and C. to the trustees for the wife of E. B., on the ground that the consideration money was paid by E. B., and that the deed in trust was made with the intent to defraud the creditors of E. B., who was, at the time and afterwards, insolvent;

*Held,* 1. That the conveyance by M. and C. to trustees in trust for Mrs. B., if valid, came within the 52d section of the article of the revised statutes relative to uses and trusts. That a trust, under the provisions of that section, resulted to E. B. in favor of his existing creditors, which was an equitable interest in the premises in question, capable of being reached by a creditor's bill.

2. That upon this equitable interest the plaintiff and W. obtained a specific lien by the filing of their creditor's bill in September, 1841; and that it was transferred to the receiver by the assignment of E. B., and passed to the defendant H. on the sale to him, by the receiver, of E. B.'s interest in the lot in question.

3. That the sale and conveyance by the receiver, to H., vested in him the whole equitable estate in the land, and authorized him to compel the heirs at law of Mrs. B. to convey to him the legal title.

4. That it being alledged in the bill, and admitted by the defendants, that the

VOL. VI.          61

Watson *v.* Le Row.

deed of trust in favor of Mrs. B. was made with the intent to defraud the cred-
itors of E. B. , such deed was absolutely void, not only as to the antecedent but
also as to the subsequent creditors of E. B. ; and was to be regarded as if it had
never existed ; at least, as to those creditors who should elect to impeach it.

5. That the deed of trust being out of the way, E. B.'s interest in the premises in
question was an equitable interest, derived under his contract of purchase with
M. and C.; which equitable interest was reached by the creditor's bill of the
plaintiff and W. against E. B., and was transferred to the receiver by the assign-
ment of E. B., and sold and conveyed by the receiver to the defendant H. ;
who had a right to call upon M. and C. to convey to him the legal title.

6. That the right of H. to the premises in question was paramount to that of the
plaintiff, and that under the deed from the receiver, he was entitled to hold
such premises.

It is a general rule, that the question whether a trust results or not, must depend
upon the intention of the parties.

A voluntary purchase, by the husband, in the name of his wife, will be fraudu-
lent as against antecedent creditors, in like manner, as if the settlement was of
property actually vested in the husband.

IN EQUITY. This was an appeal from a decree of the vice
chancellor of the eighth circuit. The bill was filed by the com-
plainant, to obtain satisfaction of a decree in chancery obtained by
one William Watson against Elijah Bigelow, out of a lot of land
in Erie county, in which it was alledged in the bill that a trust
resulted in favor of the plaintiff as a creditor of Bigelow. In
May, 1839, Bigelow gave a bond and mortgage to one Dibble,
for $2625 ; which were afterwards assigned to William Wat-
son. William Watson, in February, 1842, foreclosed the mort-
gage in chancery. On the sale of the mortgaged premises
there was a deficiency of $2,387,50 ; for which sum the decree
was docketed in Monroe and Erie counties, in August, 1842.
An execution was issued on the decree, and returned unsatisfied.
On the 17th of May, 1843, William Watson assigned the de-
cree to the plaintiff. On the 18th of September, 1840, Bigelow
became entitled to have conveyed to him, in fee simple, a lot
of land in Erie county, by Marcy and Clark, the owners there-
of, in pursuance of a previous contract for the purchase of the
same ; he having paid to Marcy and Clark the whole of the
consideration money agreed to be paid to them therefor. By the
direction of Bigelow, Marcy & Clark, on the 26th day of May,
1841, conveyed the said lot of land to S. Bigelow and Kingsley

in trust for Nelly Bigelow, the wife of Elijah Bigelow.    The plaintiff, in his bill, charged that the whole consideration money for the land was paid by Bigelow; and that the conveyance in trust for his wife, was made with the intent to defraud his creditors, and particularly William Watson or some prior owner of the bond and mortgage, and that Bigelow, at the time of making the said decree, was, and continued during his life, wholly insolvent.    Bigelow died on the 24th August, 1845; and his wife Nelly Bigelow died in June, 1843.    The bill was filed against the administrators of Bigelow, the heirs at law of his wife, and S. Bigelow and Kingsley, to whom the lot was conveyed in trust for Nelly Bigelow.    The bill was taken as confessed against all these parties.    The defendant H. Harris appeared and put in an answer, and claimed to be the owner of the lot of land in question, as a purchaser from a receiver in a previous creditors' suit against Bigelow.    On the 7th May, 1841, the plaintiff in this suit and William K. Watson recovered a judgment against Bigelow for $3394,68, upon which an execution was issued and returned unsatisfied.    A creditor's bill, founded on such judgment, and the execution so returned, was filed by the plaintiff and the said William K. Watson against Bigelow, on the 16th of September, 1841; and in October, 1841, William Watson was appointed receiver in such suit.    In February, 1842, Bigelow, in obedience to the order of the court, made a general assignment, in the usual form, to the receiver.    The receiver, at public auction on the 6th November, 1844, sold to the defendant Harris, all the right, title and interest, which Bigelow had in the lot in question on the 7th May, 1841, or at any time afterwards, for $500, and executed to Harris a deed founded on such sale, dated the 7th December, 1844.    The bill in such creditors' suit was in the usual form.    It contained an allegation that the defendant was the owner of, or in some way or manner beneficially interested, in some real estate.

*R. W. Peckham,* for the plaintiff.

*S. Stevens,* for the defendant Harris.

*By the Court,* PAIGE, P. J.   On the 26th of May, 1841, the interest of Bigelow in the lot of land in question, was an equitable interest.   He was in equity the owner in fee, having paid the whole consideration money of the land to Marcy and Clark, from whom he purchased it; and they, in equity, were his trustees.   (1 *Barb. Sup. Court Rep.* 499.   2 *Story's Eq. Jur.* § 1212.   6 *John. Ch.* 402, 405.)   At law, Marcy and Clark were the legal owners, but were liable to be compelled by a bill in equity to convey the legal title to Bigelow.   The revised statutes (1 *Vol. p.* 728, §§ 45, 46, 47, 48) did not divest the legal estate of the vendors and vest it in the vendee, although in equity the vendors were mere naked trustees, as the vendee did not acquire his interest by virtue of any grant, assignment or devise. The equitable interest of Bigelow, in the premises in question, although he had paid all the purchase money, was not the subject of sale on an execution; nor could a docketed judgment or decree create a lien on it.   The revised statutes declare that the interest of a person holding a contract for the purchase of land, shall not be bound by the docketing of any judgment or decree, nor be sold by execution upon any such judgment or decree.   (1 *R. S.* 744, § 4.   *Talbot* v. *Chamberlain,* 3 *Paige,* 220.   *Grosvenor* v. *Allen,* 9 *Id.* 76.   *Griffin* v. *Spencer,* 6 *Hill,* 525.)   This provision of the revised statutes excepts the case of an equitable interest in real estate created by a contract of purchase, from the rule applicable to equitable interests in lands, which in equity subjects them to the lien of judgments.   (9 *Paige,* 76.   10 *Id.* 569.   18 *Wend.* 240, 241, 253.)   It is very apparent that the judgment recovered by the plaintiff in this suit and William K. Watson against Bigelow, on the 7th May, 1841, under which the defendant Harris claims, was not a lien in equity upon the equitable estate of Bigelow, in the premises in question, at the time of the conveyance by Marcy and Clark to trustees, in trust for Mrs. Bigelow.

If the conveyance by Marcy and Clark to trustees, in trust for Mrs. Bigelow, by the direction of Bigelow, passed the legal estate to Mrs. Bigelow; and if a trust resulted to Bigelow in favor of his then existing creditors, under the revised statutes, (1 *Vol.* 728,

§ 52,) as is asserted by the plaintiff's counsel, and as is conceded by the counsel of Harris, did the judgment against Bigelow, under which Harris claims, become a lien in equity on the trust estate, which so resulted to Bigelow in favor of his creditors?

According to the opinion intimated by the chancellor in *Brewster* v. *Power*, (10 *Paige*, 560,) such judgment became a lien in equity, upon such trust estate, and was entitled to a preference over all subsequent liens and claims, except as against a purchaser for a valuable consideration, without notice, although the premises could not be sold upon execution on the judgment.

It is a familiar principle, where several equities affect the same estate, that if the equities are otherwise equal, they will attach upon the estate according to the periods at which they commenced; for it is a maxim of equity as well as of law, that *qui prior est tempore potior est jure.* (2 *John. Ch.* 608. 18 *Wend.* 240, 253. 9 *Paige*, 76.) If the chancellor's view of this question is the correct one, although there might be some doubt whether the assignment of Bigelow to the receiver, and the sale by the receiver of the lands in question to Harris, passed to Harris, any legal interest in such lands, yet the sale to Harris, and the payment by him of the purchase money, and the acceptance of the same by Stephen V. R. and W. K. Watson, would at least create, in favor of Harris, an equity to compel them to assign to him their judgment against Bigelow, so far at least as to enable him to enforce their lien in equity by a complaint in the nature of a bill in equity against the premises in question. And this equity of Harris would be sufficient to deprive the plaintiff in this suit of the relief he asks in his bill.

It is insisted, on the part of the plaintiff, that the creditor's bill filed by the plaintiff and William K. Watson against Bigelow, did not reach the trust which resulted in favor of the creditors of Bigelow, because Mrs. Bigelow and the trustees were not made parties to the bill. And it is also insisted, on the part of the plaintiff, that the only interest which was reached by that bill, and which was, or could be sold by the receiver, was the estate of Bigelow as tenant by the curtesy in the lot in

question.   Upon the hypothesis assumed by the counsel of the plaintiff, that the conveyance to the trustees in trust for Mrs. Bigelow came within the 51st and 52d sections of the article of the revised statutes relative to uses and trusts, a trust on the execution and delivery of the conveyance resulted to Bigelow in favor of his then existing creditors.   This resulting trust was an equitable interest of Bigelow in the lands, for the benefit of such creditors.   This equitable interest was peculiarly a proper subject for the operation of a creditor's bill.   It is the appropriate office of a creditor's bill, to reach the property of the judgment debtor, which is not the subject of levy and sale on execution.   Such property consists of equitable interests in real and personal estate and things in action.   (2 *R. S.* 174, §§ 38, 39.   1 *Paige,* 308, 9.   *Beck* v. *Burdett, Id.* 637.   *Edmeston* v. *Lyde,* 4 *John. Ch.* 687.)   The creditor obtains no specific lien on the equitable estate and things in action of his debtor by the issuing of an execution, or by its return unsatisfied.   He only acquires such lien by the filing of his bill in equity, after the return of his execution at law.   (1 *Paige,* 309, 640.)   And wherever there remains in the debtor an equitable interest in real or personal property, the filing of the creditor's bill against the debtor alone, will give the judgment creditor a specific lien thereon, and such interest may be transferred to a receiver, and sold and conveyed by such receiver under the order and decree of the court; and the purchaser can call upon the trustee of the defendant for a conveyance or an assignment of the real or personal property in which the debtor has such equitable interest, in the same manner as the defendant himself might have done, previously to the filing of the bill. (1 *Paige,* 640.)   In all such cases the trustee is not a necessary party.   It is only where the debtor has fraudulently assigned his property, and has no legal or equitable rights as against the assignee, that it is necessary to make the assignee a party, to enable the court to reach the property in his hands.   (*Edmeston* v. *Lyde,* 1 *Paige,* 640.)   In this case, if the conveyance by Marcy and Clark to S. Bigelow and Kingsley, in trust for Mrs. Bigelow, came within the 52d section of the article relative to

uses and trusts, a trust under the provisions of that section resulted to Bigelow in favor of his existing creditors, which was an equitable interest in the premises in question. Upon this equitable interest Stephen V. R. Watson and William K. Watson obtained a specific lien on the filing of their creditor's bill; and it was transferred to the receiver by the assignment of Bigelow, and passed to the defendant Harris on the sale to him, by the receiver, of the lands in question. The sale and conveyance to Harris vested in him the whole equitable estate in the land, and authorized him to compel the heirs at law of Mrs. Bigelow to convey to him the legal title. The only effect of not making the trustees and heirs at law of Mrs. Bigelow parties to the creditor's bill, was, that the decree in the creditor's suit did not conclude them, and they were left at liberty to controvert the allegation, that a trust estate resulted to Bigelow in favor of his creditors.

If the supreme court gave a correct construction of sections 45, 51 and 52, of the article in relation to uses and trusts, in *Wait* v. *Day*, (4 *Denio*, 442,) no doubt can exist on the subject of the title of Harris to the lot in question, under his deed from the receiver. In *Wait* v. *Day* the supreme court decided that the trust which resulted in favor of the creditors of the person paying the consideration, to the extent necessary to satisfy their just demands, was turned by the 45th section of the statute of uses and trusts into a legal right, cognizable as such in the courts of law.

Chief Justice Bronson says, in his opinion in that case, that by the 51st and 52d sections a trust never results for the benefit of the person who pays the consideration, but only for the benefit of his creditors. He says, " It does not result to, but ' in favor' of the creditors. It results to the debtor for their benefit. And then the 45th section turns the equitable interest of the debtor in the land into a legal right, cognizable as such in courts of law, and of course subject to sale on execution."

If, then, the equitable interest of Bigelow in the land was turned into a legal right, it can not be denied that the legal title passed to the receiver by his assignment made under the order of the court, and was conveyed to Harris by the receiver's

deed.  If the estate so conveyed to Harris was a legal estate, no legal proceeding against the heirs of Mrs. Bigelow is necessary to perfect his title, and he is now seised of both the legal and equitable estate.  It was unnecessary to make the heirs of Mrs. Bigelow parties, in reference to any surplus which might arise on the sale of the premises.  Such surplus, if any, would of course be paid into court, and the heirs would be entitled to receive what remained of the same after the payment of all the debts of Bigelow, due to such persons as were his creditors at the time the consideration of the conveyance was paid.

The allegations in the creditor's bill were sufficiently comprehensive to embrace the interest of Bigelow in the land, whether that interest was legal or equitable.  The bill contained an allegation that Bigelow was the owner of, or in some way or manner beneficially interested in, some real estate ; and it prayed that Bigelow might be decreed to apply in payment of the judgment of the plaintiff any property, real or personal, in law or equity, belonging to him or held in trust for him, or in which he was in any way or manner beneficially interested.

The sale by the receiver, without a special order of the court, was regular.  The sale was after the final decree in the cause.  (*Rule* 192 *of ed. of* 1844.)  If a special order had been required by the rules of the court, the title would nevertheless have passed to Harris by the receiver's deed.  (4 *Hill,* 173.)  But it seems that the amended final decree expressly authorized the receiver to sell the interest, legal or equitable, which Bigelow had in any real estate on the 3d of May, 1841, or at any time afterwards.

Previous to the revised statutes, if a person purchased real estate and paid for it with his own money, and took a conveyance of the legal title in the name of another, there was, in equity, a resulting trust in favor of him who paid the money, unless it satisfactorily appeared that the purchase was intended as a gift or advancement to the person in whose name the conveyance of the legal title was taken.  (10 *Paige,* 567.)  The revised statutes changed the law on this subject.  (1 *R. S.* 728, §§ 51, 52.)  They provide that no trust shall result for the benefit of the person who paid the consideration ; but only in favor

of his creditors, and for their benefit. It was the intention of the revised statutes to put an end to all resulting trusts in favor of the person paying the consideration, where the conveyance was taken with his consent or knowledge in the name of another. At common law, if a husband purchases lands in the name of his wife, it will be presumed, in the first instance, to be an advancement, or provision for the wife, and no trust will result to the husband. (1 *Cruise, tit. Trust, ch.* 1, §§ 43, 55. 2 *Story's Eq. Jur.* § 1204.) This presumption may be repelled by evidence. (1 *Swanst. Rep.* 17. 10 *Ves.* 367, *Sumner's ed. notes.* 8 *Id.* 195, *notes, p.* 207.) But the *onus probandi* does not rest upon the wife. (*Finch* v. *Finch,* 15 *Id.* 51.) Those who insist that a trust results to the husband must make it out by evidence. In *Guthrie* v. *Gardner,* (19 *Wend.* 414,) it was held that if it be shown the object of the husband was to defraud his creditors, it may be assumed that the idea of a provision for the wife was sufficiently rebutted to allow of a resulting trust in favor of the husband, which might be sold on execution, and the legal title thereby transferred to the purchaser, by virtue of the 4th section of the old statute of uses. (1 *R. L. of* 1813, *p.* 74.) Had it not been for this decision I should have apprehended that the legitimate consequence of the husband's causing a deed of land, purchased and paid for by himself, to be taken in the name of his wife, with intent to defraud his creditors, would have been to make the deed void, and to compel the creditors of the husband to resort to a court of equity to obtain possession of, or payment out of the consideration money paid for, the land. The revised statutes, (1 *R. S.* 728, §§ 51, 52,) have no application to cases where no trust would, at common law, result to the person paying the consideration. If, then, at common law, no trust would have resulted to Bigelow on the conveyance being made to his wife, sections 51 and 52 of the article in relation to uses and trusts have no application. At common law the conveyance in trust for Mrs. Bigelow would be presumed an advancement for her, and not a trust for her husband. And those who insist that a trust resulted, are required to repel this presumption by evidence. It is a general

rule that the question whether a trust results or not must depend upon the intention of the grantor. (*Cook* v. *Hutchinson*, 1 *Keen*, 50. 1 *Paige*, 265.)

A voluntary purchase in the name of the wife, by the husband, will be fraudulent as against antecedent creditors, in like manner as if the settlement was of property actually vested in the husband. (*Sug. on Ven.* 627. 19 *Wend.* 415.) A voluntary conveyance in favor of a wife or child, by one indebted at the time, is prima facie fraudulent as to antecedent creditors. (*Seward* v. *Jackson*, 8 *Cowen*, 454, 434. 4 *Wend.* 303. 7 *Id.* 436. 11 *Wheat.* 213. 8 *Id.* 229. 1 *Pet. C. C. Rep.* 460. 5 *Pet.* 280.) And an antecedent creditor has, even under the revised statutes, the right to require of the person claiming under the voluntary conveyance, to rebut by evidence the presumption of fraud. (*Wood* v. *Jackson*, 8 *Wend.* 32, *per chancellor.*) Although in an action at law the prima facie evidence of fraud is to be submitted to, and passed upon by, the jury. (4 *Wend.* 303. 7 *Id.* 436.)

In this case the fraudulent intent of Bigelow, in causing the conveyance to be made to his wife, is alledged in the plaintiff's bill, and admitted by the heirs at law of Mrs. Bigelow. It is expressly alledged in the bill that the conveyance was made with intent to defraud Bigelow's creditors. And as the bill is taken as confessed by the trustees and heirs at law of Mrs. Bigelow, they have admitted this allegation to be true. If the conveyance was made with this intent, the statute of frauds pronounces it absolutely void. And it is not only void as to the antecedent, but also as to the subsequent, creditors of Bigelow. (4 *Kent's Com.* 309, *note* 6. 3 *John. Ch. Rep.* 481.) If this conveyance is absolutely void, it is to be regarded as if it had never existed, at least as to those creditors who elect to impeach it. (18 *John.* 526.) The conveyance out of the way, Bigelow's interest in the premises in question was an equitable interest, derived under his contract of purchase with Marcy and Clark. This equitable interest was reached by the creditor's bill of Stephen V. R. Watson and William K. Watson against Bigelow, and was transferred to the receiver by the assignment of Bige-

low, and sold and conveyed by the receiver to Harris. (1 *R.
S.* 744, §§ 4, 5.) And Harris having thus acquired all the inter-
est of Bigelow under the contract, he has a right to call upon
Marcy and Clark to convey to him the legal title. The heirs
of Mrs. Bigelow can not now gainsay this right, having, by al-
lowing the bill in this suit to be taken as confessed against them,
admitted that Bigelow caused the conveyance to Mrs. Bigelow
to be made with intent to defraud his creditors. By considering
the conveyance in trust for Mrs. Bigelow as fraudulent and void,
it may be objected that Mrs. Bigelow and the trustees ought to
have been made parties to the creditor's bill, to enable the court
to reach the interest of Bigelow in the land in question. But I
can not see why the decree in the creditor's suit, the assignment
to the receiver, and the sale to Harris, were not as effectual in
passing to the latter the interest of Bigelow, under his contract
of purchase, as a sale by a judgment creditor of a fraudulent
grantor, under a judgment and execution at law, is to pass the
title to the purchaser of the land fraudulently conveyed.

I can not conceive how it was necessary to make Mrs. Bige-
low a party to the creditor's suit, to enable the court to reach
the interest of Bigelow in the land in question. She was un-
doubtedly a necessary party to enable the court to reach her
interest therein, if she had any. Why can not Harris file his
complaint against Marcy and Clark and the heirs at law of Mrs.
Bigelow, and compel the former to convey to him the legal title,
and the latter to deliver up the possession ? I see no objection
to such a proceeding. The heirs at law may perhaps, in the
suit against them by Harris, be entitled to controvert the alle-
gation that the conveyance in trust for Mrs. Bigelow was fraud-
ulent, or the allegation that a trust resulted to Bigelow in favor
of his creditors, unless they are estopped from doing so by suf-
fering the bill in the present suit to be taken as confessed against
them. But whatever may be the result in regard to the right
and interest of Harris under the receiver's deed, to be deduced
from the assumption that the conveyance in trust for Mrs.
Bigelow was fraudulent and void as against creditors, I have
no doubt—upon the ground that a trust resulted to Bigelow

in favor of his creditors, which must be assumed, from the decision in *Guthrie* v. *Gardner, supra*, and which is alledged by the plaintiff in his bill, and can not therefore be denied by him, whether that trust was a mere equitable interest in Bigelow for the benefit of his creditors, or was turned into a legal estate for the benefit of such creditors—that Harris is entitled, under his deed from the receiver, either in law or equity, to the premises in question.

The right of Harris is paramount to that of the plaintiff. All the interest of Bigelow in the premises was conveyed to the receiver in February, 1842, which was several months before the entry or docketing of the decree against Bigelow under which the plaintiff claims, and four years before the plaintiff filed his bill in this suit.

The decree of the vice chancellor of the 8th circuit must be reversed, with costs; and the plaintiff's bill must be dismissed as to the defendant Harris, with costs.