(112 App. Div. 283)

PHILLIPS v. LINDLEY.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. GUARANTY—DISCHARGE OF GUARANTOR—DILIGENCE OF CREDITOR.

Where plaintiff purchased a note from defendant, who executed a writing to the effect that, in consideration of the purchase, he agreed to collect the note without expense to plaintiff, the guaranty was one of collection, not payment, and it was incumbent on plaintiff to show due diligence against the principal before he could hold defendant.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guaranty, §§ 37, 78.]

2. SAME—INSOLVENCY OF PRINCIPAL.

The insolvency of the principal was no excuse for plaintiff's failure to endeavor to recover from him.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guaranty, § 80.]

3. SAME—BREACH OF CONDITIONS.

Defendant, a dealer in commercial paper, agreed to collect a note without expense to plaintiff, who purchased it, and in an action on the agreement defendant contended that plaintiff had failed to show a breach of the contract, in that he had not sent the note to defendant, demanded defendant's services, and been refused. It appeared that plaintiff had several interviews with defendant after the note became due, and that defendant told plaintiff that the note would be looked after, and that during legal proceedings by plaintiff to recover on the note from the maker defendant said that plaintiff should resort to the maker first, and that defendant "would take care of him." Held, that there was a waiver by defendant of any formal demand.

**4. SAME—EXTENSION OF TIME FOR PAYMENT.**

Where defendant, a dealer in commercial paper, in consideration of the purchase of a note by plaintiff, agreed to collect the same, and thereafter he wrote plaintiff that the maker could use the money for a longer time, and that the maker would pay interest, and asking to be advised as to plaintiff's inclination, defendant was liable on his guaranty notwithstanding an extension of time granted by plaintiff.

**5. EVIDENCE—JUDICIAL NOTICE.**

On appeal the court will take judicial notice that a certain place is a city and the county seat of a certain county in another state.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 31–33.]

**6. GUARANTY—DISCHARGE OF GUARANTOR—DILIGENCE.**

Plaintiff purchased a cognovit note executed by a corporation and its directors, payable at the office of the corporation in a certain county, and defendant guarantied the collection. When the note fell due, plaintiff entered judgment in the county where the note was payable, and caused executions to be issued there and in other counties against all the defendants, which executions were returned unsatisfied. Defendant claimed that the corporation received a sum of money from fire insurance, and that plaintiff should have realized from it, but it did not appear that defendant ever informed plaintiff as to how plaintiff could realize, and it appeared that at the time the judgment was recovered the corporation and all the directors were insolvent. *Held,* that defendant was not relieved from liability on the ground of lack of diligence on the part of plaintiff.

**7. SAME—PAYMENT—EVIDENCE.**

Defendant guarantied the collection of a cognovit note executed by a corporation and its directors, which was purchased by plaintiff. Plaintiff caused judgment to be entered on the note, and thereafter, in an action by plaintiff on the guaranty, it appeared that the owner of another judgment sued in a federal court to set aside certain deeds, executed by one of the directors, making plaintiff in the action on the guaranty a defendant, and that he filed a cross-bill, uniting in the prayer of the complaint, that in the action in the federal court the same attorney appeared for plaintiff in that action and for plaintiff in the action on the guaranty, and that the whole amount recovered was directed to be paid to the attorneys for the various parties as their attorneys' fees and costs, as a result of which plaintiff in the action on the guaranty received no part of his note. The attorney in question was paid $1,500 out of a total recovery of $6,000. Plaintiff in the action on the guaranty in the federal court sued on a judgment of $2,500, but the judgments of the various creditors represented amounted to nearly $50,000, and they were all anterior to plaintiff. *Held,* that a contention on the part of the guarantor that he should have been credited with $1,500 as against his liability was without merit.

**8. EVIDENCE—JUDICIAL ADMISSIONS—DEPOSITIONS.**

Where on an issue as to limitations the question was as to the residence of defendant at certain times, his statements in depositions taken in judicial proceedings were admissible as admissions.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 730–736.]

**9. LIMITATION OF ACTIONS—BURDEN OF PROOF.**

Code Civ. Proc. § 401, relative to limitations, provides that when a cause of action accrues against a person without the state the action may be commenced within the time limited therefor after his return into the state. *Held* that, where there is evidence that when the cause of action accrued defendant was without the state, the burden of showing the time of his residence in the state is on him.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, §§ 713, 714.]

Appeal from Trial Term.

Action by Oswell C. Phillips against Charles N. Lindley. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

A corporation and nine persons made a joint and several cognovit promissory note for $5,000, at six months, payable to plaintiff at the office of defendant's firm in Chillicothe, Ohio. Plaintiff purchased the note through the defendant, a dealer in commercial paper. When it fell due, March 23, 1894, $2,500 was paid upon it, and on that date defendant executed and delivered to plaintiff this paper:

"$2,500.00                                     Boston, Mch. 23rd, 1894.

"This agreement witnesseth: That whereas, O. C. Phillips, of Boston, Mass., has purchased a note of $2,500.00 of the Nat'l Cotton Seed Oil and Huller Co. of even date herewith, due in six months time, in consideration of said purchase, C. N. Lindley, of Chillicothe, Ohio, hereby agrees to collect said note without cost of expense to said Phillips.          C. N. Lindley."

This action upon that undertaking was begun on August 7, 1903. A jury was waived, and the court found the following additional facts: The makers of the note other than the corporation were directors and stockholders of the corporation. On or about September 15, 1894, and before the maturity of the $2,500 note, at the request of the defendant the plaintiff extended the time of payment for 90 days, receiving $50 as interest therefor. On or about November 9, 1894, the property of the said corporation was destroyed by fire, and thereupon and thereafter the corporation became and has remained insolvent and without property from which the plaintiff could have collected the note. Plaintiff thereafter presented his note for payment, which was refused. Thereupon plaintiff recovered judgment against all the makers in the Ross county common pleas court in Ohio in November, 1894, and issued execution to the sheriffs of the counties of Ross, Pike, and Scioto in said state, in which counties, as he has been advised by defendant, the makers had property and also resided. The executions were returned unsatisfied, and it was subsequently discovered that real estate of the makers had been conveyed by deeds made prior to the date of judgment. In June, 1895, an action was brought in the United States Circuit Court for the Eastern Division of the Southern District of Ohio by the Thompson National Bank of Connecticut, the holder of a judgment upon another note of the said corporation, and the other makers against Corwine, one of the makers, and others, joining this plaintiff as a party defendant, to set aside certain deeds of the real estate of said Corwine. The plaintiff appeared, and filed a cross-bill, uniting in the prayer of the complaint. That action went to a final decree in June, 1902, in and by which the total amount recovered was directed to be paid to the attorneys for the various parties as their attorneys' fees and costs. See Corwine v. Thompson Nat. Bank of Putnam, 105 Fed. 196, 44 C. C. A. 442. As a result, this plaintiff received no part of his note, and the note is unpaid. At the time of the recovery of the judgment in the plaintiff's own action in the Ross county common pleas, and thereafter, all the makers of the note were insolvent. The plaintiff acted with due diligence in attempting to enforce payment of the said note and of the said judgment. After maturity of the note, the plaintiff demanded that defendant collect the same, and defendant refused to do so, and no part has been paid. The defendant resided at Chillicothe, Ohio, at Cincinnati, Ohio, and in Campbell county, Ky., and was without this state from 1892 until 1897, and thereafter. The court concluded that the defendant was liable, and that the statute of limitations interposed was not a defense. It gave judgment in the amount of the note, with interest from the date of its maturity.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

William H. Harris, for appellant.

John Ewen, for respondent.

JENKS, J.  In Cumpston v. McNair, 1 Wend. 457, the words were, "I guaranty the collection of this note to George Leitch," and the court held that 'the very terms implied "that measures to collect it from the principals were first to be used, and the defendant's contract or guaranty was that those measures should be successful; if not, that he would pay the note and costs."  See, too, Craig v. Parkis, 40 N. Y. 181, 100 Am. Dec. 469; Jackson v. Decker, 14 App. Div. 415, 43 N. Y. Supp. 957. I think that, as the guaranty was one of collection, not payment, it was incumbent on the plaintiff to show due diligence against the principal debtors before he could hold the defendant, and that the insolvency of the principal debtors was no excuse for failure to pursue them.  S. S. N. Bank v. Sloan, 135 N. Y. 371, 32 N. E. 231, and authorities cited.

The appellant contends that plaintiff has failed to show a breach of the contract, in that if plaintiff desired his services he should have sent the note to him, and demanded such services, and that only a refusal thereupon could establish the breach.  The plaintiff testifies that he had several interviews with the defendant after the note became due; that after the first of 1894 he asked defendant about the payment of the note, and that the defendant told him "to rest easy; there was enough insurance to take care of it and several others; that they would all be looked after, and that he was going to Europe"; and thereupon the defendant went to Europe for several months.  The plaintiff then proceeded to put his cognovit note in judgment.  The plaintiff testifies that, during the course of the United States Court' litigation, in several conversations with the defendant the plaintiff referred to the guaranty, saying that he was tired of waiting for his money, and that he did not wish to go through with the suit, because "he had guarantied me the payment of that note," and defendant told him to resort to the makers of the note first, and afterwards, if he did not get it, defendant "would take care of him."  If up to that time the plaintiff had omitted the formal demand for action by the defendant, I think that this testimony is sufficient to establish a waiver by the defendant.  See Sigourney v. Wetherell, 6 Metc. (Mass.) 553; Mead v. Parker, 111 N. Y. 259, 18 N. E. 727; Ege v. Barnitz, 8 Pa. 304.  In Sigourney v. Wetherell, supra, the court say (page 563 of 6 Metc. [Mass.]):

"A new promise or unequivocal act of recognition of his continued liability, made with full knowledge of the laches of the holder of the note guarantied, will continue the liability of the guarantor."

It is also urged that the defendant had extended the note so that it could not be enforced until December, 1894, and that if so, it was the duty of the plaintiff to make the demand upon defendant when it became due, whereas plaintiff had proceeded to collect it himself before it became due under the extension.  But the conversation last narrated, wherein defendant told plaintiff to resort to the makers first, and, if he failed, the defendant "would take care of it," took place long after the note fell due, even by the extension.  The evidence is sufficient to hold the defendant to his guaranty despite the extension, for he wrote the following letter to the plaintiff, which, if we may not assume to have been the moving cause of such extension, at least, in the absence of evidence contra, indicates acquiescence and consent:

"Dear Sir: The note $2,500, National Cotton Seed Oil and Huller Company, which you hold, matures on the 23rd instant. The company are now in the midst of their crushing season, and could use the funds for 90 days longer. Will of course get you 8% inst. payable in advance. Advise me."

Even if after his first conversation after the fire with the defendant as to the payment of the note, the plaintiff took steps to protect himself by entry of judgment on the cognovit note while the defendant was absent in Europe, it is hard to see how the defendant was prejudiced as to his guaranty. Despite the extension, plaintiff obtained judgment, which apparently stands in full force and effect. Even if no formal demand was made at the time the extension expired, and the plaintiff had taken the matter in his own hands, he was but pursuing the course required of him before he could proceed against the defendant, and the defendant fails to suggest in what way he was thereby prejudiced in any steps that defendant could have taken to collect the note. In any event, the doctrine of waiver would apply, for the reasons heretofore stated.

The appellant also contends that there was failure of proof of due diligence. The note was primarily a corporate note, payable at Chillicothe, Ohio, and the individual makers were evidently upon the paper for the reason that they were directors and stockholders of that corporation. When the note fell due (I exclude the extension in this discussion), the plaintiff entered judgment thereon in the Ross County Common Pleas Court. We will take judicial notice that Chillicothe, Ohio, is a city, and the county seat of Ross county, Ohio. Rice on Evidence, vol. 1, p. 26. It appears that executions issued in that county and two other counties against all the defendants were returned unsatisfied. This proceeding was "at least prima facie a compliance with the contract." Backus v. Shipherd, 11 Wend. 629. And in Camden v. Doremus, 3 How. (U. S.) 515, at page 533, 11 L. Ed. 705, the court say: "The diligent and honest prosecution of a suit to judgment, with a return of nulla bona, has always been regarded as one of the extreme tests of due diligence." "If beyond this there is negligence, or more than what was done might reasonably have been done to collect the debt, and a loss ensues, it lies on the defendant to show the loss, and that it was occasioned by such negligence or omission." Backus v. Shipherd, 11 Wend., at page 636. The appellant points out that the corporation received a large sum for insurance, and complains that the plaintiff did not realize from that; but the evidence shows that the defendant alone testifies to the fact that "he saw a good deal of insurance money paid"—about $100,000—which was paid "to them or their creditors." It does not appear that he ever informed the plaintiff in response to his inquiries how plaintiff would realize, and he does not suggest now any legal way then known to the plaintiff by which he could have laid hand upon any part of this money, or that any part was available to discharge the note. The court has found upon sufficient evidence that after the fire of November 9, 1894, the corporation became and has remained insolvent, and that at the time of the recovery of the judgment on November 28, 1894, and thereafter, all of the makers were insolvent. I think that, so far as the liability of the defendant is concerned, the defendant is entitled to the finding that he pursued due diligence.

In White v. Case, 13 Wend. 543, the court (per Nelson, J.) say:

"So in the common case, where by the guaranty the party is obligated to pay after due course of law, the contract reasonably and fairly implies an undertaking on the part of the guarantor that the principal will be in a situation to be sued, or, in other words, within the jurisdiction of the state, so that he may be sued when the demand becomes due."

So far as the suit in the United States Court is concerned, the plaintiff did not institute it; he was made a party defendant. It does not appear that his delay in appearance therein in any way prejudiced the defendant.

The further point is made that, as it appears that the attorney for the plaintiff in that suit was paid $1,500 out of the total recovery therein of $6,000, therefore the defendant in any event should have been credited with that sum as against his liability in this action as a recovery on the note. The defendant concludes that as $1,500 was paid to the attorney who appeared for the plaintiff when a defendant in the United States Court suit, therefore the client received $1,500 as his part of the recovery of $6,000. He is not entitled to that conclusion, because it appears that the said attorney was also one of the attorneys for the Thompson Bank, the plaintiff in that action. Hence, this sum presumably was paid to him also as attorney for the plaintiff. How can we determine, when the record is silent, what was his quotient as an attorney for the plaintiff and as attorney for the defendant uniting with the plaintiff? Generally, as an attorney for the plaintiff he would naturally tender more services, and so be entitled to greater consideration. As between his two clients, his client the plaintiff in the action was a creditor in double the sum owed to his client this plaintiff. There is a further consideration. The scheme of the order was to divide the $6,000 equally between four attorneys, one representing both the plaintiff in that action and this plaintiff as a defendant. This plaintiff, as such defendant, sued on a judgment of $2,500. The judgments of the various creditors represented in that suit amounted to nearly $50,-000. They were all anterior to that of this plaintiff. What, then, justifies the conclusion that this plaintiff, with a claim of one-twentieth, received an allowance of one-fourth? Of the other attorneys representing defendants, and receiving $1,500 each, Douglas represented defendants with judgments of $15,000, and Jewett $10,000. All that we can logically conclude is that, whatever dividend the plaintiff received in that suit was, under the order of the court, entered on consent, paid to the plaintiff's attorney for his services therein. The terms of the guaranty expressly absolved the plaintiff from all costs of collection. There is evidence that the defendant knew of these legal proceedings, and approved of them. Moreover, the plaintiff was entitled to charge up his costs in pursuing the principal debtor. Mosher v. Hotchkiss, 41 N. Y. 589; Brandt on Suretyship and Guaranty, vol. 1, § 111. Finally, it does not appear that this point was raised by pleading or at the trial.

The defendant pleads that he resides in the city, county, and state of New York, and that any cause of action by reason of the facts alleged in the complaint did not accrue within six years before this action was begun. The cause of action arose outside of this state. Under section 390a of the Code of Civil Procedure, the statute of limitations of

the state where the cause of action arose would apply, unless the cause of action originally accrued in favor of a resident of this state. The plaintiff testifies that he resided in this state at the time this action was begun. We can only consider this plea of our statute of limitations on the theory that the cause of action originally accrued to a resident of this state.

The defendant contends that, as the note fell due in 1894, and this action was begun August 7, 1903, the New York statute is a bar. The court found that defendant resided at Chillicothe, Ohio, and Cincinnati, Ohio, and in Campbell county, Ky., and was without the state from 1892 to October 8, 1897, and thereafter. The defendant, in the guaranty executed in March, 1894, described himself as of Chillicothe, Ohio. He testifies that in September or November, 1894, he was in his office at Chillicothe, Ohio, and that he was a law student, engaged in the business of selling commercial paper; that he maintained an office there for several years after that, and also one in Cincinnati. In a deposition read in evidence, taken January 12, 1897, in answer to a question of his residence, he testifies: "I live in Campbell County, Ky." He also testifies that he resided, he thought, at Chillicothe in the years 1892, 1893, and 1894. In a deposition taken February 17, 1899, read in evidence, he testifies that he resided in Campbell county, Ky. The plaintiff testifies that the defendant resided at Cincinnati, Ohio, on February 10, 1897. These answers of the defendant in such proceedings were competent as admissions. Stephens' Digest on Evidence (2d Ed.) p. 58, note, and authorities cited, 74, note, and authorities cited; Greenleaf on Evidence, § 193. No testimony was offered by the defendant as to his residence in this state. Thus there was evidence to establish that when the cause of action accrued the defendant was without the state; the burden of showing the time of his residence in the state was upon him. See Code Civ. Proc. § 401; Mayer v. Friedman, 7 Hun, 218, affirmed 69 N. Y. 608; Palmer v. Bennett, 83 Hun, 220, 31 N. Y. Supp. 567, affirmed 152 N. Y. 621, 46 N. E. 1150.

The appellant contends that the court regarded the writing sued on as a guaranty of payment; that it was not, and therefore the judgment in any event should not stand. Although the court did make a remark at the close of the trial which may indicate that such was its view, the complaint, the proof, and the findings are sufficient to sustain the judgment upon the agreement pleaded, even though we construe it as a guaranty of collection.

The judgment is affirmed, with costs. All concur.