## JELLIFFE v. THAW.
### No. 2.

Circuit Court of Appeals, Second Circuit.
Dec. 4, 1933.

William A. Hyman, of New York City (Adolph Bangser and William A. Hyman, both of New York City, of counsel), for plaintiff-appellant.

Bartholomew B. Coyne, of New York City (Alfred J. Bedard, of New York City, of counsel), for defendant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff brought this action to recover $10,000 for services rendered by him to the defendant "as a physician, alienist, neurologist, and medical adviser" from the year 1907 to August, 1913. At the latter date, the defendant, after having been acquitted of a charge of murder on the ground of insanity and sentenced to Matteawan State Hospital, escaped from the hospital.

The services involved were performed in connection with the second trial of Thaw for murder, and preparation therefor and afterwards while he was confined in Matteawan. At the close of the evidence in the present action, the trial court directed a verdict for the defendant on the ground that a discharge in bankruptcy, based upon a voluntary petition filed on August 7, 1908, freed him from any obligation to pay for the portion of the services performed before August 7, 1908, and on the ground that the claim for subsequent services was barred by the New York statute of limitations. It was testified at the trial

that the reasonable value of all the alleged services was $10,000 and the value of such part of the services as were rendered after August 7, was $2,500.

The plaintiff contends that the discharge in bankruptcy did not bar plaintiff's claim for services rendered before the filing of the petition. His argument is that the discharge was rendered in a proceeding in which the court had not obtained jurisdiction. The petition which was filed in the Western District of Pennsylvania alleged:

"That he has had his principal place of business (or has resided or has had his domicile) for the greater portion of six months next immediately preceding the filing of this Petition at Pittsburgh within said Judicial District."

The pleading was drawn under chapter 2, section 2 of the Bankruptcy Act (11 USCA § 11) which grants power to the District Court to "adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof. * * *"

■■ Though the petition with allegations in the alternative be defective as a pleading, the court was not without jurisdiction. Any one of the alternatives, whether of residence, domicile, or place of business, was a sufficient basis for invoking an adjudication in bankruptcy. The petitioner was not obliged to allege or establish all or any two of the grounds of jurisdiction. Such decisions as Bank of Port Jefferson v. Darling, 102 App. Div. 431, 92 N. Y. S. 483, Arnot v. Wright, 55 Hun, 561, 9 N. Y. S. 15, Collins v. Beebe, 54 Hun, 318, 7 N. Y. S. 442, and In re Peter J. Laskaris, 1 A. B. R. 480, dealt with attacks made in an original proceeding upon its regularity because the pleading was in the alternative. In none of them was it attempted, as here, collaterally to impeach a decree based on alternative pleading. It is well settled that a decree cannot be attacked collaterally unless it appears upon the face of the proceeding that jurisdiction was lacking. McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; New River Collieries Co. v. Snider (C. C. A.) 286 F. 667; In re New York Tunnel Co. (C. C. A.) 166 F. 284. The claim that the court that entertained the Thaw petition in bankruptcy lacked jurisdiction resembles the contention often made that a petition alleging preferential payments generally and without specification gives the court no jurisdiction, and is equally unsound. The pleadings in each case are objectionable for much the same reason, but there is in neither case a failure of jurisdiction. Bradley v. Huntington (C. C. A.) 277 F. 948; In re Fuller (C. C. A.) 15 F.(2d) 294; In re S. W. Straus & Co., 67 F.(2d) 605, decided by this court November 6, 1933.

The plaintiff also relies on estoppel to set up the discharge as a defense. He testified that after the petition in bankruptcy was filed Thaw said that he was not attempting to eliminate plaintiff's claim, but was only seeking to avoid certain creditors whom he did not wish to pay, and that he advised plaintiff not to file any proof of claim because he would settle in full for all services when he had gained his freedom. The plaintiff testified that, in view of this assurance, he did not prove his claim, and consequently received no dividend from the bankruptcy estate.

■ According to plaintiff's evidence, defendant broke his promise by not paying for the services rendered prior to the filing of the petition in bankruptcy, but he made no false representation that would give rise to an estoppel, for the plaintiff knew all the facts, including the bankruptcy proceeding itself, and might have proved his claim had he chosen to do so. There was no false representation as to an existing fact relied on by plaintiff to his detriment, and hence no estoppel. Shapley v. Abbott, 42 N. Y. 443, 1 Am. Rep. 548.

■■ The oral promise to pay the indebtedness that had been discharged in bankruptcy did not in itself revive the indebtedness for services rendered prior thereto. A promise to pay a debt discharged in bankruptcy is void under section 31, subd. 5, of the New York Personal Property Law (Consol. Laws N. Y. c. 41), unless it be in writing. Here there was no writing. Hence the discharge barred plaintiff's claim so far as it related to services rendered prior to August 7, 1908, when the petition in bankruptcy was filed.

The question remains whether the New York six-year statute of limitations barred recovery for services rendered after the filing of the petition in bankruptcy. The plaintiff's testimony was that the services rendered while the defendant was in Matteawan were to be paid for after he had gained his freedom. He was adjudged sane and released July 16, 1915, so that, if this testimony be credited, the indebtedness which was not barred by the discharge in bankruptcy became due then. It was held by the trial judge that the claim for this indebtedness, said to amount to $2,500, was outlawed on October

24, 1929, when the present action was brought.

Thaw left the state of New York for Atlantic City on July 16, 1915, the day the cause of action accrued, and thereafter went to Europe for five months. He was part of the time in New York ("off and on," as he expressed it) and part of the time in Pittsburgh between January 15, 1916, and January 16, 1917. From January, 1917, to May, 1924, he was in a hospital in Philadelphia. Between this last date and October 24, 1929, when the summons in this action was served, there was evidence that he was in New York.

■ Section 19 of the New York Civil Practice Act provides:

*"Effect of defendant's absence from state or residence under false name.* If, when the cause of action accrues against a person, he is without the state, the action may be commenced, within the time limited therefor, after his return into the state. If, after a cause of action has accrued against a person, he departs from the state and remains continuously absent therefrom for the space of one year or more, or if, without the knowledge of the person entitled to maintain the action, he resides within the state under a false name, the time of his absence or of such residence within the state under such false name is not a part of the time limited for the commencement of the action. * * * *"

The words, "continuously absent * * * for the space of one year or more," in section 19 of the Civil Practice Act, mean absent in a substantial sense, and preclude the statute from running when a defendant is generally absent from the state, though he makes "casual temporary" visits during the period. Connecticut Trust Co. v. Wead, 172 N. Y. 497, 65 N. E. 261, 92 Am. St. Rep. 756. This rule was not altered by Mack v. Mendels, 249 N. Y. 356, 164 N. E. 248, 61 A. L. R. 386, which held no more than that a defendant residing in New Jersey, who daily came to his office in New York, was not "continuously absent" within the meaning of the statute.

■■ Thaw's testimony as to his presence in New York between July 16, 1915, and January, 1917, is too confused and doubtful to justify holding as matter of law that he was so far present during this time as to make up the period of seven months necessary to total six years when added to the five years and five months intervening between his return to New York from Philadelphia in May, 1924, and October 24, 1929, the date when the summons was served. The testimony does not show with any certainty that he was not "continuously" absent from New York within the meaning of the statute during the whole period from July 16, 1915, to January, 1917, when he went to Philadelphia. During this interval he was completely absent from July 16, 1915, to January, 1916, and during 1916 he was only in New York "off and on." A jury might well have found that his visits in the year 1916 were "casual" and "temporary." There is evidence that he was "continuously" in New York from May, 1924, to October 24, 1929, but there is no other period after July 16, 1915, when the indebtedness accrued, which can as a matter of law be tacked on to the time between May, 1924, and October 24, 1929, to make up the six years. The question whether the defendant was continuously absent from the state for "one year or more" was one of fact for the jury, Isenstein v. Malcomson, 227 App. Div. 66, 236 N. Y. S. 641, and the burden of proving his presence was upon the defendant, Phillips v. Lindley, 112 App. Div. 283, 98 N. Y. S. 423, affirmed 188 N. Y. 606, 81 N. E. 1173; Palmer v. Bennett, 83 Hun, 220, 31 N. Y. S. 567, affirmed 152 N. Y. 621, 46 N. E. 1150. The defendant relies on Mason v. Henry, 152 N. Y. 529, 46 N. E. 837. But in that case the issue was whether the running of the statute was suspended by defendant's fraud. In cases where the question is when the plaintiff discovered the fraud and the time of discovery is within his knowledge, the burden of showing when the discovery occurred is upon the plaintiff. United States v. Diamond Coal & Coke Co. (C. C. A.) 254 F. at page 268. The rule has no relation to cases where fraud is not involved.

The items of indebtedness prior to the filing of the petition in bankruptcy are barred by the discharge, but those subsequent are only barred if the six-year statute of limitations had run before this action was brought. The question whether the statute of limitations had run as to the later items should have been left to the jury.

Because the trial judge directed a general verdict and took all the items of the claim from the jury, the judgment is reversed.