## BANISTER v. SOLOMON et al.
### No. 186.

Circuit Court of Appeals, Second Circuit.
March 17, 1942.

I. Arnold Ross, of New York City (Emanuel Kintisch, of New York City, of counsel), for appellant.

Abraham I. Menin, of New York City, for appellees.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The trustee in bankruptcy appeals from a judgment dismissing his complaint in an action to recover a parcel of real estate conveyed to the bankrupt's wife, Molly Solomon, on October 15, 1924. The action, begun on September 20, 1940, was based upon two alternate theories; the only one we shall discuss is that the purchase money for the property, $2,500, came from the bankrupt while he was insolvent, and that the conveyance was therefore fraudulent as against his creditors at that time under §§ 273 and 276 of the New York Debtor and Creditor Law. That statute was passed on April 1, 1925 and was not therefore in effect at the time of the conveyance, but, so far as concerns the question now at bar, it made no change in the pre-existing law. Guthrie v. Gardner, 1838, 19 Wend. 414; Watson v. LeRow, 1849, 6 Barb. 481; Mead v. Gregg, 1852, 12 Barb. 653; Cole v. Tyler, 65 N.Y. 73 (semble). If the bankrupt was at the time insolvent, as he unquestionably was, and if he advanced the consideration, a constructive trust resulted in favor of his creditors at that time. The first question therefore is whether the money advanced in fact came from the bankrupt or from elsewhere. The judge found that it did not come from the bankrupt and the judgment must stand unless the finding is reversed. It seems to us that it must be reversed for the following reasons. In March, 1923, two judgments were entered against the bankrupt in actions for personal injuries suffered in a motor accident; one of the judgment creditors was a boy of twelve, Philip Forgione, who recovered $10,000; the other was his father, Frederick, who recovered $2,600. At that time the bankrupt owned and conducted a trucking business which he transferred in December, 1923, to a corporation of which he, his wife and a son, seven years old, were the incorporators. It is not necessary to give the details of his other various shifts to escape the judgments; the record proved abundantly that he was willing to adopt any device to that end; and his discharge has been denied because of his perjuries. The judge thought, however, that this conduct could not stand in place of proof that he had advanced the purchase price of the property in 1924, and for that reason dismissed the complaint.

Although the trustee was forced to rely upon indirect evidence upon the issues, we think (considering the fact that the judge did not see either the bankrupt or his wife, and that we are therefore not at the usual disadvantage in reviewing the findings) that the cumulative effect of the evidence excludes any other possibility than that the bankrupt paid the money. It is true that in the bankruptcy proceedings Molly Solomon swore that it was she who paid it; her story was that, although she

had never had any substantial separate property of her own until she visited her parents in Hungary in 1911, while she was there her mother died and she inherited $2,500 from her which she brought home with her in cash in 1912. This she said that she had kept in the bankrupt's safe and that she had used $2,000 of it to pay for the property in question (it is not plain from her testimony where the other $500 came from). On its face this story is highly unlikely, yet we might find it difficult to disregard it if it stood uncontradicted in spite of the fact that the judge never saw the witness; for that circumstance does not deprive the finding of all presumption of validity though it certainly greatly lessens its conclusiveness. But the story does not stand uncontradicted; for the plaintiff proved at the trial that when questioned at the time of her entry into the United States in 1912, Molly Solomon had said that she was entering with only two dollars in her possession. This her counsel seeks to explain on the theory that incoming aliens do not like to admit possession of large sums for fear of robbery or the like. Be that as it may, she did not take the stand at the trial, and the explanation was not hers at all. Certainly we should not accept it. Thus, as the record comes to us, the following is its upshot. The wife of a completely discredited and fraudulent bankrupt declared in the bankruptcy proceeding that she had received $2,500 in cash, had kept it in a safe for over ten years, and then had used it in whole, or nearly in whole, to buy the real property where she lived with her husband, and from which he conducted his business through a dummy corporation. Being contradicted by her own admission that at a time when she should have had possession of this money she did not have it, she did not take the stand to deny it but remained mute. Her husband did the same. We cannot avoid the conclusion that the whole tale was a manifest fabrication and that the money was never hers; indeed we are not sure that the judge gave any more credit to her than we do. His opinion—orally expressed at the time—leaves us in doubt whether it was not rather the absence of positive proof that the money came from the bankrupt than credence of Molly Solomon's former testimony, that caused him to find against the plaintiff. But it seems to us that, once her account of the transaction is disbelieved, it inevitably follows that the bankrupt furnished the money; certainly if it had another source, one of the defendants should have come forward to disclose it.

▮▮▮▮ There remains the defense of the statute of limitations. As we have seen, Molly Solomon took the deed on October 15, 1924 and the constructive trust arose at once. This action was not brought until September 20, 1940, nearly sixteen years later; and obviously it was barred unless a part of the intervening period was tolled. The proper limitation period is that prescribed in § 53 of the New York Civil Practice Act—ten years. Buttles v. Smith, 281 N.Y. 226, 236, 237, 22 N.E.2d 350; Hearn 45th St. Corp. v. Jano, 283 N.Y. 139, 27 N.E.2d 814, 128 A.L.R. 1285. The suit might therefore have been brought at any time before October 15, 1934. (Philip Forgione's infancy is not a factor, since he became of age on January 29, 1932 and the extension given by § 60 of the New York Civil Practice Act expired on January 29, 1933.) The second sentence of § 19 of the New York Civil Practice Act is as follows: "If, after a cause of action has accrued against a person, he departs from the state and remains continuously absent therefrom for the space of one year or more * * *, the time of his absence * * * is not a part of the time limited for the commencement of the action." We think that the case falls within that section for the following reasons. On February 17, 1933 Molly Solomon accepted a deed of land in New Jersey which recited that she was at that time a resident of that state; on January 20, 1936 she accepted a second deed with a similar recital; on March 19, 1936 she executed a mortgage extension agreement as a resident of New Jersey; on September 14, 1938 she executed a deed, reciting that she resided in New Jersey; and on October 10, 1938 she accepted a fourth deed, so reciting. Moreover, the bankrupt executed two affidavits, one on April 27, 1938 and the other on March 22, 1939, both declaring that he was then a resident of New Jersey. These were competent evidence against Molly Solomon because, as declarations of Louis Solomon's state of mind—"intent"—they constituted exceptions to the rule against hearsay. Wigmore §§ 1727, 1784. As they were living together as man and wife, Molly Solomon's domicil and residence were the same as her husband's. Hunt v. Hunt, 72 N.Y. 217, 242, 243, 28 Am.Rep. 129; Wacker v. Wacker, 154 App.Div. 495, 139 N.Y.S. 78. Thus, there was evidence of her continuous

residence in New Jersey from February 17, 1933 until March 22, 1939. It is true that the bankrupt also swore on October 6, 1938, in his petition for voluntary adjudication, that for the greater part of the preceding six months he had "resided" in New York. Certainly that is not conclusive; but, if it were, it would not serve, because at best it would not end his New Jersey residence before April 6, 1938. On February 17, 1933, the period of ten years allowed by § 53 had still about twenty months to run; so that, even though we assume that the statute began to run again on April 6, 1938, it had not expired on October 6, 1938, the date of adjudication, and the trustee had until October 6, 1940, within which to sue. § 11, sub. e of the Bankruptcy Act, 11 U. S.C.A. § 29, sub. e.

Thus, the action was in time if evidence of continuous residence in New Jersey is enough to toll § 19 in the absence of explanation. It is indeed true that continuous absence, not continuous residence, has been the test since 1896. Mack v. Mendels, 249 N.Y. 356, 164 N.E. 248, 61 A.L.R. 386. Nevertheless, although we have not found any case upon the point, it appears to us that unexplained proof of continuous residence outside the state—at least in the case of a housewife whose occupation does not ordinarily call her away regularly—should create a presumption of continuous absence from the state. The continuity of absence demanded by § 19 is not broken by occasional or sporadic returns, but only by those which are "so public, and under such circumstances, as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting the debtor." Fowler v. Hunt, 10 Johns 464; Connecticut Trust & Safe Deposit Co. v. Wead, 172 N.Y. 497, 502, 503, 65 N.E. 261, 92 Am. St.Rep. 756; Jelliffe v. Thaw, 2 Cir., 67 F. 2d 880. This doctrine received renewed recognition in Mack v. Mendels, supra, 249 N.Y. 356, 363, 164 N.E. 248, 61 A.L.R. 386, though the defendant in that case was found not to have been continuously absent. Moreover, the courts of New York have held that, once the plaintiff has shown that the defendant has been absent from the state, the burden rests upon the defendant to show that his absences were not such as tolled the running of the statute in his favor. Mayer v. Friedman, 7 Hun 218, affirmed on opinion below 69 N.Y. 608; Helmer v. Minot, 75 Hun 309, 27 N.Y.S. 79; Palmer v. Bennett, 83 Hun 220, 31 N.

Y.S. 567, affirmed 152 N.Y. 621, 46 N.E. 1150; Phillips v. Lindley, 112 App.Div. 283, 98 N.Y.S. 423, affirmed 188 N.Y. 606, 81 N. E. 1173; Goldberg v. Lackshin, Sup.App.T., 139 N.Y.S. 943; Jelliffe v. Thaw, supra, 67 F.2d 880. Thus, it rested upon Molly Solomon, first, to rebut the presumption of absence from the state coextensive with her residence in New Jersey; and, further, to disclose what, if any, returns she made to New York between February 17, 1933, and at least April 6, 1938. As she did neither, she failed to carry the burden upon her.

Judgment reversed; judgment for the plaintiff that Molly Solomon convey the property in suit to the plaintiff.